UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

STEVEN A. SCIARRETTA, as
Trustee of the Barton Cotton
Irrevocable Trust,

        Plaintiff/Counterclaim
        Defendant,

CASE NO.: 9:11-cv-80427-
MIDDLEBROOKS-JOHNSON

v.

THE LINCOLN NATIONAL
LIFE INSURANCE COMPANY,

        Defendant/Counterclaim
        Plaintiff/Third-Party Plaintiff

v.

SANFORD MUCHNICK, an Individual,
and as Trustee of the Barton Cotton
Irrevocable Trust,

        Third-Party Defendant.

## PLAINTIFF STEVEN A. SCIARRETTA'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Steven A. Sciarretta ("Sciarretta" or "Plaintiff"), by and through his undersigned counsel hereby moves, pursuant to Rule 56 of the Fed. R. Civ. Proc. ("FRCP"), for summary judgment with respect to Plaintiff's Complaint against defendant, The Lincoln National Life Insurance Company ("Lincoln"), in the above-captioned action [D.E. 1].[1]

### PRELIMINARY STATEMENT

The life insurance policy in dispute was procured by the Barton Cotton Irrevocable Trust ("Trust"), an irrevocable life insurance trust created by the insured, Barton Cotton ("Cotton"),

---

[1] Plaintiff will seek an inquest on damages with respect to his claim for attorneys' fees under Fla. Stat. § 627.428 (2011) if this motion is granted.

who arranged for funds to be lent to the Trust in order to pay premiums for the policy. This Trust was structured so that Cotton's family members – specifically his wife and children -- would receive the benefits of the policy upon Cotton's death. Cotton died in October 2010, but the life insurance company, Lincoln, has refused to pay the death benefit to the Trust for the benefit of Cotton's family. This refusal violates Florida law and entitles the Trust to recover interest and attorneys' fees in connection with this litigation.

Lincoln attempts to invoke the ruse of "STOLI" as its purported basis to not pay the claim to Cotton's family. As Plaintiff understands STOLI, and its indiscriminate usage by life insurance companies like Lincoln (especially when faced with contracted-for death claims), the phrase concerns transactions where third parties without an insurable interest in the life insured obtain the benefits under a life insurance policy, supplanting the insureds' family members, who are the typical beneficiaries of life insurance policies. While Lincoln may have reason to dislike such STOLI arrangements in general, **there simply is no such arrangement in the present case. Instead, here Cotton's family members have always been, and to this day remain, the beneficiaries of the Trust that Lincoln concedes owns the Policy.**[2] The Trust merely has loan obligations to meet with respect to a premium finance loan arranged with a third party, a loan that Cotton used to fund the premium obligation of his Trust after the policy was issued in a manner that appeared to make sense to him and that gave no rights to the lender other than the normal rights of a lender – collateral in the property financed.

It is undisputed that the beneficiaries of the death benefit owed by Lincoln in this lawsuit are the widow and the children of Cotton. Lincoln, however, seeks to deny Cotton's family members the normal and customary benefits of life insurance under a policy that Lincoln

---

[2] *See* Lincoln Resp. in Opp'n to Mot. to Dismiss Countercls. and Third Party Compl., at 2 [D.E. 25] ("The Trust, with Sciaretta as trustee, is the present owner and beneficiary of the policy.").

willingly issued to the Trust, despite these family members having experienced the very loss that the policy was designed guard against – the death of their husband/father.  For the reasons set forth below, Lincoln has no legal basis for its position, and this Court should grant summary judgment in favor of the Trust.

## STATEMENT OF MATERIAL FACTS

In accordance with Local Rule 7.5(c):

1.      On or about April 1, 2008, Cotton entered into an Exclusive Rights Agreement ("ERA") with Wealthmodes, LLC ("Wealthmodes").  A copy of the ERA is attached to the Declaration of James M. Westerlind ("Westerlind Decl.") submitted herewith as Exh. 1.[3]  The only parties to the ERA are Cotton and Wealthmodes.  *See* Exh. 1.

2.      Pursuant to the ERA, Cotton granted Wealthmodes the exclusive right to: (a) sell any life insurance policies insuring the life of Cotton *if* such a sale were to occur in the future; and (b) obtain any premium finance loans for such policy(ies) *if* such was desired in the future. *See* Exh. 1, Subparagraphs 2(a)(ii) and 2(a)(iii).  In exchange for these rights, Wealthmodes paid to Cotton an "Exclusive Rights Fee," which fee equals the initial premiums owed to Lincoln for the life insurance policy that is the subject of this lawsuit.  *See* Exhs. 1 (Subparagraph 3 and p. 10); 2; and 3 (Larry Bryan Tr.), at 78:10 – 82:2.

3.      On May 8, 2008, Cotton, as grantor, created the Trust.  *See* Exh. 4.  The original trustee of the Trust was Third-Party Defendant Sanford Muchnick ("Muchnick"), and the Trust beneficiaries were (and always have been, and remain) Cotton's spouse and children.  *Id.*

4.      On May 9, 2008, Cotton, as the proposed insured, and Muchnick, in his capacity

---

[3] Exhs. 1-7 are attached to the Westerlind Decl. Exhs. 8-10 are attached to the Declaration of Steven A. Sciarretta ("Sciarretta Decl.") submitted herewith.  All references to Exhibits herein are to those attached to the Westerlind Decl. and Sciarretta Decl. unless otherwise indicated.

3

as trustee of the Trust and proposed owner, signed an application that was submitted to Lincoln seeking an $8 million life insurance policy ("Application"). Lincoln issued a $5 million policy to the Trust as the owner and beneficiary, insuring the life of Cotton, under policy number JJ7033333 ("Policy"), with an Issue Date of June 6, 2008. *See* Exh. 5 (Policy with Application annexed thereto). It is undisputed that the Policy was in force on 23, 2008. Lincoln Countercl. ¶ 47 [D.E. 7]; Answer to Counterclaim and Third Party Compl. ¶ 47 [D.E. 35].

5.      On August 4, 2008, Muchnick resigned as trustee of the Trust and appointed Sciarretta to act as successor trustee, which appointment was accepted by Sciarretta. *See* Exh 8. This change of trustee information was provided to and accepted by Lincoln. *See* Exh. 6.

6.      On October 14, 2008, the Trust was amended and restated ("Amended Trust Agreement"). *See* Exh. 9. The Amended Trust Agreement, which was signed by Cotton, as grantor, as well as by all of the beneficiaries of the Cotton Trust, contains the same beneficiaries as the original Trust agreement. *See id.* The Amended Trust Agreement re-domesticated the Trust to the State of Utah, names Sciarretta and the Bank of Utah as co-trustees and, like the original Trust Agreement, is irrevocable. *See id.*

7.      On October 16, 2008, **approximately four months after the Policy was placed in force**, the Trust, as amended, entered into a premium finance loan ("Loan") with Imperial Premium Finance, LLC ("Imperial"). Sciarretta Decl. ¶ 7. Cotton executed a Personal Guarantee in connection with the Loan. *Id.* Roberta Cotton, Cotton's spouse and an income beneficiary of the Trust, executed a Security Agreement acknowledging Imperial's security interest in the assets of the Trust, including the Policy, to secure its interest as a lender under the Loan. A copy of the Security Agreement is attached as Exh. A to the Affidavit of Roberta Cotton ("Cotton Aff.") submitted herewith.

8.     The Loan matured, and the Trust's obligations to repay the principal, interest and other amounts due thereunder came due, on August 6, 2010. *See* Sciarretta Decl. ¶ 8. The Trust failed to make payment under the Loan on August 6, 2010. *Id.* Subject to a reservation of rights, Imperial agreed not to foreclose on its security interest under the Loan. *Id.* As of December 1, 2011, Imperial was owed a total of $641,900.71 by the Trust under the Loan. *Id.* ¶ 12.

9.     Cotton died on October 18, 2010. *Id.* ¶ 9. On or about October 29, 2011, Plaintiff submitted a claim to Lincoln for payment of the Policy's death benefit. *Id.* ¶ 9; Lincoln Answer ¶ 8 [D.E. 7]. Lincoln failed to pay the claim. *Id.* ¶ 10. After six months of Lincoln failing to fulfill its contractual obligations, Sciarretta commenced this action on April 21, 2011, seeking to recover the death benefit owed by Lincoln under the Policy and attorneys' fees incurred by the Trust in connection with this action. *See* D.E. 1.

10.    On May 6, 2011, Lincoln filed its Answer, Counterclaim and Third-Party Complaint in this action. D.E. 7. Lincoln's Counterclaim and Third-Party Complaint contends that the Policy was issued in violation of Florida's insurable interest laws and that the Policy should be rescinded for material misrepresentations made in the Application. *Id.* The alleged material misrepresentations pertain solely to whether Cotton and/or the Trust had discussions regarding the potential sale of the Policy in the secondary life insurance market, whether Cotton and/or the Trust were to be compensated for applying for the Policy, and/or whether someone other than Cotton would be paying or financing the premiums for the Policy. *Id.*

## ARGUMENT

### A.    <u>Standard of Review</u>

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim for defense – on which summary judgment is sought." FRCP Rule 56(a).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, . . . or other materials[.]" FRCP Rule 56(c)(1).

"If a party . . . fails to properly address another party's assertion of facts required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.] FRCP Rule 56(e)(2) and (3). To be blunt, when a motion for summary judgment is made by plaintiff, the time has come for the defendant "to put up or shut up." *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000) (citation and internal quotation marks omitted).

"'There mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].'" *Employers Reinsurance Corp. v. Neighborhood Health Partnership, Inc.*, No. 01-cv-04233, 2003 WL 23833948, at *2 (S.D. Fla. Apr. 17, 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "The party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Employers Reinsurance Corp.*, 2003 WL 23833948, at *2 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)); *see also KeyBank National Assoc. v. Willoughby*, No. 09-cv-0662, 2010 WL 3212086, at *3 (M.D. Fla. Aug. 12, 2010) ("The evidence presented [in opposition to the motion for summary judgment] cannot consist of conclusory allegations,

legal conclusions or evidence which would be inadmissible art trial.  * * *  The non-moving party may not rest on mere allegations made in pleadings, legal memoranda, or oral argument.") (citations and internal quotation marks omitted).

**B.**      **The Policy Was Not Issued In Violation of Florida's Insurable Interest Laws**

      **1.**      **The Trust Acted In Accordance With Florida Law**

The Policy is payable under its terms and is incontestable under mandatory Florida law. To support its wrongful failure to pay the claim, Lincoln is asking the Court to find that the Policy is void *ab initio* for violations of the insurable interest law, but wants the Court to overlook statutory provisions and to instead imply legal standards that the Florida Legislature chose not to adopt.

The area of buying and selling life insurance policies is heavily regulated by recent Florida statutes.  The issue of insurable interest is controlled by Florida's insurable interest statute, Fla. Stat. § 627.404 (2011) (codified in 2008), and the issue of policy sale or transfer is regulated by the Florida Viatical Settlement Act ("FVSA"), Fla. Stat. § 626.991, *et seq.* (2011) (last amended in 2007).  The relevant two statutes must be considered together.

Fla. Stat. § 626.9911 states, in relevant part, as follows:

> (10)    "Viatical settlement contract" means a written agreement entered into between a viatical settlement provider, or its related provider trust, and a viator.  The viatical settlement contract includes an agreement to transfer ownership or change the beneficiary designation of a life insurance policy at a later date, regardless of the date that compensation is paid to the viator.  The agreement must establish the terms under which the viatical settlement provider will pay compensation or anything of value, which compensation or value is less than the expected death benefit of the insurance policy or certificate, in return for the viator's assignment, transfer, sale, devise, or bequest of the death benefit or ownership of all or a portion of the insurance policy or certificate of insurance to the viatical

> settlement provider. A viatical settlement contract also includes a contract for a loan or other financial transaction secured primarily by an individual or group life insurance policy, other than a loan by a life insurance company pursuant to the terms of the life insurance contract, or a loan secured by the cash value of a policy.

>   *   *   *

> (14) "Viator" means the owner of a life insurance policy or a certificateholder under a group policy, which policy is not a previously viaticated policy, who enters or seeks to enter into a viatical settlement contract. This term does not include a viatical settlement provider or any person acquiring a policy or interest in a policy from a viatical settlement provider, **nor does it include an independent third-party trustee or escrow agent.**

Fla. Stat. § 626.9911(10), (14) (emphasis added). The FVSA also contains the following provision concerning an insured's ability to sell a policy that he/she procures on his/her own life:

> Except as hereinafter provided, if a viatical settlement contract is entered into within the 2-year period commencing with the date of issuance of the insurance policy or certificate to be acquired, the viatical settlement contract is void and unenforceable by either party. Notwithstanding this limitation, such a viatical settlement contract is **not void and unenforceable if:**

>   *   *   *

> (3) The owner of the policy is **not a natural person**[.]

Fla. Stat. § 626.99287(3) (emphasis added).

  Lincoln apparently contends that the Policy is void as a result of the ERA, which allegedly shows that Cotton intended to sell the Policy to investors. However, the ERA did not violate Florida's applicable statutes. The ERA, by its terms, only would apply to a sale of the Policy to a third party if such a sale, or life settlement, were to occur in the future. As quoted above, the FVSA allows an insured that purchased a policy on his or her own life to sell the policy after two years from its issue date. Implicit in the FVSA is the right of the insured to buy

a policy for the purpose of selling it two years later. If Cotton procured the Policy with the intention of selling it two years after its issue date, there can be no violation of Florida law, as codified by the Florida Legislature, because Cotton was merely procuring the Policy for the purpose of exercising a right afforded to him by the FVSA. The Florida federal courts that have recently analyzed whether the issue of an insured's intent to sell a policy violates Florida's insurable interest statute have not considered the FVSA in their analysis which, when considered, makes clear that an insured's intent (without a specific agreement with a third party) to sell cannot be a violation of Florida's statutory scheme on this subject.

Moreover, whether or not Cotton **intended** to sell the Policy within two years of the issue date is of no consequence, as **the Policy was never sold** during this two year period. Indeed, to date, neither the Policy, nor an interest in the Trust, has been sold to anyone. The only transaction that Cotton entered into was the ERA. The ERA only granted Wealthmodes the ability to act as the exclusive broker to sell one or more policies, in exchange for which it would receive a fee. The ERA did not call for the sale or transfer of any policy, or interest therein, to Wealthmodes in exchange for an amount less than the applicable death benefit. *See* Fla. Stat. § 626.9911(10).

Finally, the ERA cannot support Lincoln's assertion of a violation of Florida's insurable interest or viatical settlements statutes because neither party to the ERA, Wealthmodes or Cotton (individually), could cause the Policy or an interest therein to be sold. The Policy was purchased and owned from the outset by the *irrevocable* Trust. Since the Trust was irrevocable, Cotton had no legal ability to cause the Policy, or a beneficial interest in the Trust, to be sold at some point after the Trust was created and purchased the Policy. Neither the Trust, nor any beneficiary of the Trust (nor anyone else), was a party to the ERA. Thus, Wealthmodes could not enforce any

rights that it thought that it had under the ERA against the Trust or its beneficiaries; Wealthmodes could only attempt to enforce its rights under the ERA against Cotton, individually, and could not satisfy any damages claim that it may have had against Cotton via the Trust or the Trust's assets (*i.e.*, the Policy) because the Trust was **irrevocable**.  Wealthmodes never obtained a security interest in the Policy or the Trust to secure its interests in under the ERA.  Larry Bryan, the principal of Wealthmodes, readily admitted that Wealthmodes "screwed up" in this regard, and could not claim an interest in the Policy.  *See* Exh.  3 at 151:4-22. Wealthmodes never had, and to this day does not have, an interest in the Policy or the Trust.

The only other agreement entered into in the first two years the Policy was in force was the Loan between Imperial and the Trust, which was entered into over four months after the Policy had been issued and several months after the Policy was in force.  The Loan is a permissible transaction pursuant to Fla. Stat. §§ 626.9911(10) and 626.99287(3).

In sum, the Florida Legislature has clearly regulated the areas of law at issue via the State's insurable interest statute and the FVSA.  These statutes contain requirements that were recently enacted and amended – during the peak of the STOLI debate – none of which has even arguably been violated.  To support its wrongful refusal to pay, Lincoln asks this Court to imply additional restrictions on the rights of insureds, like Cotton, and irrevocable trusts that are not provided for by these statutes.  If the Florida Legislature had intended to impose the restrictions advocated by Lincoln, it would have included them in the statutes.  Since the Legislature has not taken such action, this Court should not do so on its own.

**2.      It Does Not Matter if Wealthmodes Funded the Initial Premiums**

The payment made to Cotton under the ERA by Wealthmodes provided Cotton the funds that he used to contribute to his Trust in order for it to pay the initial premium.  Florida law,

however, does not support Lincoln's position that the use of funding from a third party renders the Policy void.[4]  Under Florida's insurable interest statute, a stranger to the insured can procure or cause to be procured a life insurance policy insuring the insured's life if the benefits of that policy are to be paid to the insured's family members:

> An individual of legal capacity may procure or effect an insurance contract on his or her own life or body of another individual for the benefit of any person but **no person shall procure or cause to be procured or effected an insurance contract on the life or body of another individual** *unless* **the benefits under such contract are payable to** the individual insured or his or her personal representatives, or **to any person having, at the time such contract was made, an insurable interest in the individual insured.** The insurable interest need not exist after the inception date of coverage under the contract.

Fla. Stat. § 627.404(1) (emphasis added).  As noted above, it is undisputed that, at the time coverage incepted under the Policy, as well as at the time of Cotton's death and at the time this motion was filed, the beneficiaries of the Policy – the Trust beneficiaries – all had (and still have) an insurable interest in Cotton's life.

As discussed above, the Legislature did not attempt to regulate the insured's intent to sell a policy in the future.  Nor is an insured's intent relevant under Florida's insurable interest statute when someone without an insurable interest in the insured's life takes out a life insurance policy for the benefit of the insured's family members.  The insured's intent could only be an issue under the first part of the statute, where the insured acquires a policy and names an unrelated party as beneficiary. *See PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, et al.,* 28 A.3d 1059, 1073-1074 (Del. 2011) (analyzing 18 Del. C. § 2704(a), which is virtually identical to Fla. Stat. § 627.404(1)).  When the first part of the statute is implicated, some courts

---

[4] Notably, Lincoln's pleadings do not allege that Cotton lacked the financial ability to pay the premiums for the Policy.

11

analyze whether the insured, in good faith, actually purchased the subject policy and gifted it to another. *Id.* If the insured did not actually purchase the policy and was simply a straw-man in the transaction, and an investor who lacked an insurable interest in the insured provided the funding for the initial premiums for the policy, then the policy, in addition to violating the FVSA, may be void or voidable for violating the **first** part of the statute **if the investor is to receive the benefit of the policy.** *See Dawe,* 28 A.3d at 1074-1076. *But see Kramer v. Phoenix Life Insur. Co.,* 15 N.Y.3d 539 (N.Y. 2010).

Where, as in the present case, a third-party who lacks an insurable interest in the insured procures a policy, or causes a policy to be procured, and the beneficiary of that policy is a member of the insured's family who has a recognized insurable interest in the insured, then only the **second** part of the statute is implicated and the transaction is completely consistent with Florida's insurable interest laws. *See Brockton v. Southern Life and Health Ins. Co.,* 556 So.2d 1138, 1139 (Fla. Dist. Ct. App. 1989) (policy purchased on insured's life by and for the benefit of insured's aunt not void for lack of insurable interest under Florida law because beneficiary had recognized insurable interest); *Ohio Nat. Life Assur. Corp. v. Langkau et al.,* 353 Fed. Appx 244, 252 (11th Cir. 2009) ("An insurable interest 'arises whenever a potential beneficiary has a cognizable interest, whether pecuniary or arising from natural affection, in the life of the insured.'") (quoting *Brockton*).[5]

Simply put, Cotton's intent and Wealthmodes' involvement in funding the premium are completely irrelevant here. *See Principal Life Ins. Co. v. DeRose,* No. 08–cv–02294, 2011 WL 4738114, at *7 (M.D. Pa. Oct. 5, 2011) (intent irrelevant to insurable interest inquiry under

---

[5] Fla. Stat. § 627.404, was substantially amended in 2008, which amendments included the addition of Fla. Stat. § 627.404(1), quoted *supra. See* 2008 Fla. Sess. Law Serv. Ch. 2008-36. Since the purpose of these statutory amendments was to **clarify** existing law, *id.,* Florida common law, such as *Brockton,* should be interpreted consistently with the amended statute.

Pennsylvania's insurable interest statute with respect to policies procured on insured's life by a trust because "the insurable interest requirement is determined solely by the relationship between the insured and the policy beneficiaries. The undisputed beneficiary of the insurance policies at their inception was the Trust and the undisputed beneficiaries of the Trust were [the insured's] children."); *Lincoln Nat. Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Trust, et al.,* 638 F. Supp.2d 1170, 1178-1179 (C.D. Cal. 2009) (same under California law).

### 3. Imperial's Premium Finance Loan is Irrelevant

Lincoln also asserts violation of law due to the premium finance loan entered into by the Trust and a third party lender months after the Policy was issued. However, the Loan never resulted in a change of ownership of the Policy or the beneficial interest in the Trust. Instead, Imperial, the lender, only received a collateral assignment to protect the value of its Loan, and the Trust continued to hold full title to the Policy and to the death benefit currently owed by Lincoln to the Trust, for the benefit of Cotton's family,[6] net of the outstanding Loan amount. *See* Sciarretta Decl. ¶ 12.[7] Imperial has not enforced its security rights and taken ownership of the Policy. *See* Sciarretta Decl. ¶ 8.

---

[6] These facts distinguish the recent decision of *Pruco Life Insurance Co. v. Brasner,* No. 10-cv-80804-COHN/SELTZER (S.D. Fla. Nov. 14, 2011) (Exh. 7 (copy of decision)). *Brasner* involved a policy whose original owner and beneficiary were the insured and the insured's spouse, respectively. After the policy was issued, and well before Pruco contested the policy, the policy's **owner and beneficiary was changed to a third-party that lacked an insurable interest in the insured's life.** Thus, if the insured in *Brasner* had passed away, **no portion of the policy's death benefit would have been payable to the insured's family members and/or other person(s) with an insurable interest.** In this case, however, the Trust remains the owner and beneficiary of the Policy and its beneficiaries remain Cotton's family members.

[7] The sworn testimony in this case establishes that Imperial entered into the Loan with the Trust in October 2008, approximately four months after the Policy was put in force. *See* Sciarretta Decl. ¶ 7. Insurable interest is examined at the time a policy is issued. Fla. Stat. § 627.404(1) ("The insurable interest need not exist after the inception date of coverage under the contract."); *see also McMullen v. St. Lucie County Bank,* 128 Fla. 745, 748 (Fla. 1939) ("These authorities and others hold that if the insurable interest existed at the time the insurance was secured, the fact that such interest is later cut off or for other reasons ceases to exist is of no consequence.").

It is well-settled that a lender has an insurable interest in the life of the insured to the amount owed under the loan.[8] Here, both Sciarretta and Roberta Cotton, the primary beneficiary of the Trust, have submitted statements under oath in support of this motion stating unequivocally that the death benefit will be paid to the Trust and distributed pursuant to the Trust's provisions after the Trust's obligations under the Loan have been satisfied. *See* Sciarretta Decl. ¶ 12; Cotton Aff. ¶ 6. Thus, Imperial's Loan to the Trust is irrelevant to this insurable interest analysis.

**C.    Defendant's Material Misrepresentation and Fraud Claims and Defenses Are Barred by Florida's Incontestability Statute**

Lincoln's fraud/material misrepresentation claims fail as a matter of law because Lincoln did not challenge the Policy on these grounds within the two year contestability period established by both the provisions of the Policy and Florida's incontestability statute. Paragraphs 33 through 44 of Lincoln's Counterclaim/Third-Party Complaint [D.E. 7, starting at p. 6] alleges that Cotton and the Trust, through its then trustee, Muchnick, made material misrepresentations in their responses to the following questions[9] in the Application:

---

[8] *See Langkau,* 353 Fed. Appx. at 253-254 (note executed by insured in favor of lender gave lender a pecuniary interest in the insured's life sufficient to create an insurable interest under amended Fla. Stat. § 627.404, so that lender could properly be named primary beneficiary of insured's $100,000 policy provided as security for the debt); *Travelers Ins. Co. v. Tallahassee Bank & Trust Co.,* 133 So.2d 463 (Fla. Dist. Ct. App. 1961) (insured's assignment of life insurance policies to bank as collateral for loan meant that "the [bank] was in effect substituted for the insured until the policies were reclaimed by the payment of the principal debt."); *see also Connecticut Mut. Life Ins. Co. v. Schaefer,* 94 U.S. 457, 450 (1876) ("It is well settled that a man has an insurable interest in his own life . . . **and the creditor in the life of his debtor**") (emphasis added); *id.* at 461-462 ("And in cases where the insurance is effected merely by way of indemnity, **as where a creditor insures the life of his debtor, for the purpose of securing his debt, the amount of insurable interest is the amount of the debt**") (emphasis added).

[9] The questions quoted from the Application herein are those posed to Cotton (as the proposed insured). The same substantive questions were posed in the Application to the Trust (as proposed owner of the Policy) in Questions 35-37, which were answered in the same manner by Muchnick in his capacity as trustee.

Question 22: "Will you, the proposed insured and/or beneficiary, and/or any entity on your behalf, receive any compensation, whether via the form of cash, property, an agreement to pay money in the future, a percentage of the death benefit, or otherwise, if this policy is issued?" (Answer: "No.")

Question 23: "Have you, the proposed insured, been involved in any discussion about the possible sale or assignment of this policy or a beneficial interest in a trust, LLC or other entity created or to be created on your behalf?" (Answer: "No.")

Question 25: "Is this policy being funded via a premium financing loan or with funds borrowed, advanced or paid from another person or entity?" (Answer: "No.")

Exh 5, at 24.

Assuming *arguendo* for purposes of this motion, that the answers to the foregoing questions were false when made and material to Lincoln's decision to issue the Policy, Lincoln is barred by the provisions of the Policy and Florida law from seeking to rescind the Policy on the basis of these alleged misstatements. Fla. Stat. § 627.455 (2011) provides as follows:

> Every insurance contract shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue except for nonpayment of premiums and except, at the option of the insurer, as to provisions relative to benefits in event of disability and as to provisions which grant additional insurance specifically against death by accident or accidental means.

Moreover, the Policy contains the following incontestability provisions at page 6:

> **Incontestability**  We will not contest this policy after it has been in force during the Insured's lifetime for 2 years from the Issue Date.  An increase in the Specified Amount will not be contested after it has been in force during the Insured's lifetime for 2 years from its effective date.

Exh. 5.  Since Cotton died in October 2010, more than two years after the Policy was placed in force, and since Lincoln never attempted to challenge the validity of the Policy during the contestability period set forth in the Policy and in Fla. Stat. § 627.455, Lincoln cannot, as a matter of law, seek to rescind the Policy on the ground that there were material misrepresentations made in the Application. *See Allstate Life Ins. Co. v. Fox,* 700 So.2d 49, 50

(Fla. Dist. Ct. App. 1997) ("The [incontestability] clause required by statute prevents the insurer from raising as a defense to payment of a claim, any misrepresentations a decedent made in the policy application when that decedent survives at least two years from the date the policy is issued"); *Allstate Life Ins. Co. v. Miller*, 424 F.3d 1113, 1115 (11th Cir. 2005) ("Accordingly, just as Florida courts would dismiss an otherwise-valid action once the statute of limitations on that claim had run, Florida's appellate courts have uniformly held that once the incontestability clause becomes effective, insurers are barred from attempting to rescind or cancel the insurance policy based on allegations that the insured engaged in fraud or misrepresentation") (citations omitted).

**D.      Lincoln's "Condition Precedent" Argument Fails**

Lincoln's Counterclaim also contends that the Policy is void *ab initio – i.e.*, it never became effective – based on an alleged condition precedent set forth in the Application:

> In signing the Application, Mr. Cotton and Mr. Muchnick also agreed that the Cotton Policy would take effect "only when: 1) the Policy has been delivered to and accepted by me/us; 2) the initial premium has been paid in full during the lifetime of the Proposed Insured(s); and 3) **the Proposed Insured(s) remain in the same state of health *and insurability* as described in each part of the application at the time conditions 1) and 2) are met."** (emphasis added).

D.E. 7 (Lincoln Countercl.) ¶ 31. This contention fails as a matter of law since, if enforced as Lincoln suggests, the above-quoted provision (hereafter the "Continued Insurability Provision") would directly conflict with the foregoing incontestability statute and the incontestability provision in the Policy. The Continued Insurability Provision must be construed in accordance with Fla. Stat. § 627.455 (Florida's incontestability statute) and, to the extent that it contradicts Florida's incontestability statute, it is unenforceable:

> Any insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid,

except as provided in section 627.415, but shall be construed and applied in accordance with such conditions and provisions as would have been applied had such policy, rider or endorsement been in full compliance with this code.

Fla. Stat. § 627.418 (2011).  Several courts have specifically refused to enforce life insurance policy provisions that purport to restrict or circumvent the applicable incontestability statute.  In *Protective Life Ins. Co. v. Sullivan*, 425 Mass. 615 (Mass. 1997), the Massachusetts Supreme Court held that a fraud exception found in a life insurance policy's incontestability clause was unenforceable, even though the policy language had been approved by the Massachusetts Insurance Commissioner, because the fraud exception was contrary to the plain language of the applicable incontestability statute, which did not allow for a fraud exception.  More recently, in *PHL Variable Ins. Co. v. U.S. Bank Nat. Ass'n*, No. 10-cv-01197, 2010 WL 3926310 (D. Minn. Oct. 4, 2010), it was held that a fraud exception similar to the one at issue in *Sullivan* was unenforceable under Minnesota law because the exception contravened the applicable incontestability statute, which did not allow for a fraud exception.  As was the case in *Sullivan* and *U.S. Bank*, the Continued Insurability Provision -- as it is being used by Lincoln herein -- flatly contravenes Florida's incontestability statute, and is, therefore, unenforceable because it creates an additional exception not found in the statute.

Florida courts have consistently held that once a policy's contestability period has expired, an insurer is not only barred from contesting the policy based on fraud and/or misrepresentation, but is also barred from asserting additional claims that would merely provide the insurer with further means to challenge the validity of the policy.  *See Bankers Sec. Life Ins. Co. v. Kane*, 885 F.2d 820, 822 (11th Cir. 1989) ("in this case a fraud suit would merely provide a different means to challenge the validity of the insurance contract").

Furthermore, in a case directly on point, *Ohio Natl. Life Assur. Corp. v. Satterfield*, 956

17

N.E.2d 866 (Ohio Ct. App. 2011), an insurer sought to challenge the validity of a life insurance policy beyond the expiration of the policy's 2-year contestability period by relying on the following provision from the policy's application:

> "[i]t is mutually agreed that: * * * no policy shall be in force unless and until: (1) it is delivered to [the applicant]; (2) the first full premium is paid during the lifetime of all persons to be insured under the policy; and (3) the statements and answers in this application remain true and complete, without material change, as of the date of the policy delivery."

*Satterfield,* 956 N.E.2d at 869.

The application in *Satterfield* stated that the insured never had cancer, which was true at the time the application was submitted to the insurer. While the insurer was processing the application, the insured was diagnosed and treated for cancer and did not advise the insurer of the same. After the insured's death, the insurer refused to pay the death benefit, arguing that the policy had never been put in force because the insured had been diagnosed with cancer between the date that he had submitted his application and the date the insurer delivered the policy. The insurer argued, like Lincoln does here, that this was a material change to the information provided in the application, resulting in the failure of a condition precedent.

The court held that because the "material change" clause was a **warranty, not a condition precedent,** the policy had gone into force and, thus, the expiration of the policy's contestability period barred the insurer from challenging the statements made by the insured in the application:

> The life insurance contract at issue in this case provides that "no policy shall be in force unless and until: (1) it is delivered to [Mr. Satterfield]; (2) the first full premium is paid during the lifetime of [Mr. Satterfield]; and (3) the statements and answers in [Mr. Satterfield's] application remain true and complete, without material change, as of the date of the policy delivery." The first two clauses identify "some event [that] shall happen" or "some act

[that] shall be performed" and, therefore, are properly characterized as conditions precedent. **The third clause, however, does not refer to a certain act or event, rather it is an assurance that the state of facts—that is, the truth of Mr. Satterfield's application answers, which the parties supposed to then exist—remained true. We, therefore, conclude . . . that the material-change clause was not a condition precedent but a warranty.**

*Satterfield,* 956 N.E.2d at 871 (citations omitted; emphasis added).

The Continued Insurability Provision -- requiring that "the Proposed Insured(s) remain in the same state of health and insurability as described in each part of the application" -- is the same as the provision at issue in *Satterfield.* Thus, as was the case in *Satterfield,* the Continued Insurability Provision does not refer to a certain act or event, but is rather an assurance that the state of facts provided in the Application regarding Cotton's insurability remained true up until the time the Policy was delivered. As such, the Continued Insurability Provision **cannot be considered a condition precedent**, the failure of which would render the Policy void *ab initio.*[10]

E.      **Lincoln Has Materially Breached the Policy**

"The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Rollins, Inc. v. Butland,* 951 So.2d 860, 876 (Fla. Ct. App. 2006) (citation omitted). Here, it is undisputed that all of the elements of Plaintiff's breach of contract claim have been satisfied by a preponderance of the evidence: (1) Lincoln issued the Policy to the Trust; (2) Lincoln has failed to honor the death claim and pay the death benefit to the Trust; and (3) the Trust has been deprived of the death benefit ($5 million) as a result. Thus, Lincoln has materially breached the Policy.

---

[10] The Florida Supreme Court has recognized that the term "insurability" refers to health. *See Matthews v. Metropolitan Life Ins. Co.,* 89 So.2d 641 (Fla. 1956). The above-quoted questions in the Application that Lincoln claims were false, had nothing to do with Cotton's health status.

**F.    Plaintiff is Entitled to Recover Attorneys' Fees in This Action**

Attorneys' fees may be awarded by a court only when authorized by statute or by agreement of the parties. *State Farm Fire & Cas. Co. v. Palma*, 629 So.2d 830 (Fla. 1993); *Trytek v. Gale Industries, Inc.,* 3 So.3d 1194 (Fla. 2009). Here, Plaintiff's entitlement to attorneys' fees is based on statute, Fla. Stat. § 627.428(1). Plaintiff brings this action as trustee of the Trust, the owner and beneficiary of the Policy. As such, Plaintiff is entitled to recover from Lincoln the reasonable attorneys' fees he has incurred in prosecuting the within action.

## CONCLUSION

Plaintiff's motion for summary judgment should be granted in its entirety.

Dated:   December 5, 2011

THOMAS L. DAVID, P.A.

By: s/Thomas L. David_____
       Thomas L. David
       Florida Bar No. 213969

4800 LeJeune Road
Coral Gables, FL  33146
Tel.: (305) 371-6600
Fax: (305) 667-8015
E-mail: td@davidcapital.com

*Of Counsel*
Julius A. Rousseau (*pro hac vice*)
James M. Westerlind (*pro hac vice*)
Eric Biderman (*pro hac vice*)
**ARENT FOX LLP**
1675 Broadway
New York, NY 10019
Tel: (212) 484-3900
E-mail: rousseau.jule@arentfox.com
E-mail: westerlind.james@arentfox.com
E-mail: biderman.eric@arentfox.com

*Attorneys for The Barton Cotton Irrevocable
Trust and Steven A. Sciarretta and Sanford
Muchnick in their capacities as trustees*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Wendy Lynn Furman
Pett Furman PL
2101 NW Corporate Boulevard
Suite 316
Boca Raton, FL 33431-7343
(561) 994-4311
(561) 982-8985 (fax)
wfurman@pettfurman.com

Charles J. Vinicombe (*pro hac vice*)
Drinker Biddle & Reath LLP
Suite 300
105 College Road
Princeton, NJ 08542-0627
(609) 716-6500
charles.vinicombe@dbr.com

Michael D. Rafalko (*pro hac vice*)
Nolan B. Tully (*pro hac vice*)
Nicole C. Wixted *(pro hac vice)*
Drinker, Biddle & Reath, LLP
One Logan Square
Suite 2000
Philadelphia, PA 19103
(215) 988-2700
michael.rafalko@dbr.com
nolan.tully@dbr.com
nicole.wixted@dbr.com

*Attorneys for Defendant*
*The Lincoln National Life Insurance Company*

s/Thomas L. David
Thomas L. David

21