UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STEVEN A. SCIARRETTA, as Trustee of the Barton Cotton Irrevocable Trust,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>    Defendant/Counterclaim Plaintiff/Third-Party Plaintiff<br><br>v.<br><br>SANFORD MUCHNICK, an Individual, and as Trustee of the Barton Cotton Irrevocable Trust,<br><br>    Third-Party Defendant. | CASE NO.: 9:11-cv-80427-MIDDLEBROOKS-BRANNON |

**PLAINTIFF'S VERIFIED MOTION FOR ATTORNEYS' FEES AND COSTS
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Richard Breit, as successor co-trustee to Steven A. Sciarretta ("Sciarretta") of the Barton Cotton Irrevocable Trust ("Trust" or "Plaintiff"), by and through his undersigned counsel and pursuant to Southern District of Florida Local Rule 7.3(c), hereby respectfully moves for entry of an Order granting and awarding attorneys' fees to Plaintiff pursuant to Fla. Stat. § 627.428(1).

**PRELIMINARY STATEMENT**

This case was tried before a jury, which recently rendered a special verdict finding that the subject policy did not lack insurable interest and that defendant's counterclaims and

1

NYC/661987.7

affirmative defenses lacked merit. *See* D.E. 150. On April 2, 2012, this Court entered a Final Judgment for Plaintiff, in the amount of $5 million, plus prejudgment interest. *See* D.E. 162.

Plaintiff incurred and is obligated to pay no less than $1,281,978.00 in reasonable and necessary attorneys' fees and expenses in prosecuting this case.[1] This amount is calculated by taking the total amount of attorneys' fees ($1,229,077.00) that Plaintiff incurred and is obligated to pay for its attorneys' work on this case and adding costs ($52,901.09). Plaintiff is entitled to recover its reasonable and necessary attorneys' fees incurred in this action pursuant to Fla. Stat. § 627.428(1).

## BACKGROUND

On October 29, 2010, Steve Sciarretta, in his capacity as co-trustee of the Trust, submitted the death claim that was the subject of this litigation to the defendant, The Lincoln National Life Insurance Company ("Lincoln"). *See* Declaration of Steven A. Sciarretta ("Sciarretta Decl.") submitted herewith, ¶ 2. Lincoln failed to pay or deny the death claim for months. *Id.* Accordingly, Mr. Sciarretta thought that the Trust should retain a lawyer to pursue the death claim on behalf of the Trust. *Id.*

Since the only asset of the Trust was the subject policy (and the death claim that had been made thereunder), the Trust did not have any funds to hire counsel to pursue the death claim. *Id.* ¶ 3. The beneficiaries of the Trust were unable or unwilling to provide funds to the Trust to hire counsel to pursue the death claim against Lincoln. *Id.* ¶ 4. Thus, the only options for the Trust to pursue the death claim were: (a) to try and hire qualified counsel on a contingency fee basis (which would have resulted in approximately 40% of a recovery if the Trust was successful against Lincoln being paid to contingency fee counsel); or (b) to convince Imperial Premium

---

[1] Plaintiff reserves the right to supplement this total to account for additional attorneys' fees and costs incurred subsequent to the time entries submitted herewith.

Finance, LLC ("Imperial"), which company had previously provided a loan to the Trust to pay the premiums for the policy and had a security interest therein, to advance money to or on behalf of the Trust to pay qualified counsel to pursue the death claim at an hourly fee rate. *Id.*

Mr. Sciarretta discussed the issue with Imperial. *Id.* ¶ 5. Despite the fact that the Trust was in default under the premium finance loan with Imperial, as it had no funds to repay the debt owed thereunder, Imperial agreed to advance additional funds to or on behalf of the Trust to pursue the death claim, essentially on a contingent basis. *Id.* Imperial understood that the Trust would not be able to repay the loan if it was unsuccessful in collecting the claim, yet Imperial nevertheless consented to advance the fees. *Id.* Thereafter, the Trust executed a Loan Agreement for Litigation Expenses ("LALE"), dated February 17, 2011, pursuant to which Imperial could advance to the Trust any attorneys' fees, costs and expenses incurred by the Trust in connection with pursuing the death claim against Lincoln. *Id.*; *see* copy of LALE, attached to Sciarretta Decl. as Exh. B. The Trust is obligated to repay Imperial for all attorneys' fees, costs and expenses advanced by Imperial pursuant to the terms of the LALE. Sciarretta Decl. ¶ 5.

After reaching an agreement with Imperial, Mr. Sciarretta retained Thomas L. David, Esq., on an hourly fee basis, to pursue the death claim on behalf of the Trust. *Id.* ¶ 6. A copy of the Trust's engagement letter with Mr. David is attached to the Sciarretta Decl. as Exh. A. At the time that Mr. Sciarretta hired Mr. David, Mr. Sciarretta was hopeful that a letter from a lawyer on behalf of the Trust would cause Lincoln's Claims Department to take the Trust's death claim seriously and pay the claim quickly. *Id.* ¶ 7. Thus, when he retained Mr. David, Mr. Sciarretta did not think that it was necessary for the lawyer retained by the Trust to have specialized knowledge and skill, or to have abundant resources, to litigate a case against Lincoln. *Id.* Indeed, Lincoln had not denied the claim or otherwise indicated that it intended to challenge the

3

validity of the policy when the Trust retained Mr. David. *Id.* All of the communications that the Trust had had with Lincoln before it had retained Mr. David were with Lincoln's claims personnel; the Trust had had no communications with any lawyers (inside or outside counsel) on behalf of Lincoln concerning the death claim before it had retained Mr. David. *Id.*

Moreover, when Mr. Sciarretta initially decided to retain counsel on behalf of the Trust, he believed that it would be more economical to retain an hourly fee lawyer to pursue the death claim than to hire counsel on a contingency fee basis, since the recovery for the Trust, if successful, was an all or nothing proposition. *Id.* ¶ 8. That is, if successful, the Trust would recover the $5 million death benefit (nothing less), and 40% of that amount ($2 million) would be paid to the lawyer based on the contingency fee arrangement. *Id.* Since Mr. Sciarretta had hoped that a letter from a lawyer representing the Trust would cause Lincoln to pay the death claim quickly, he did not think that he should retain a lawyer on a contingency fee basis (and pay that lawyer 40% or $2 million) simply to write a letter to Lincoln. *Id.*

Mr. Sciarretta retained Mr. David because he was experienced in insurance claim litigation and had earned a fine reputation for his skills. *Id.* ¶ 9. Lincoln, however, ignored Mr. David's efforts to recover the death benefit for the Trust. *Id.* ¶ 10. Thus, on April 21, 2011, Mr. David commenced this action against Lincoln. *Id.* ¶ 11. Lincoln, represented by Drinker Biddle & Reath LLP ("Drinker"), a large, national law firm that represents carriers in cases involving life insurance claims across the country, filed its counterclaim, seeking a declaration that the policy was void *ab initio* based upon theories of fraud, misrepresentation and civil conspiracy – including allegations that the policy was procured as part of an illegal stranger originated life insurance ("STOLI") scheme – on May 25, 2011. *Id.*

After the Trust's motion to dismiss Lincoln's counterclaim was denied (*see* D.E. 32), discovery in this action had to be pursued by the parties in earnest. *Id.* ¶ 13. The original Pretrial Scheduling Order, entered on June 29, 2011 [D.E. 22], required that all discovery be completed by October 10, 2011; all pretrial motions be filed by October 24, 2011; and that this case be ready for trial near the end of December 2011. *Id.* A number of depositions and additional document discovery had to be completed in short order, and it seemed likely that this case would go to trial. *Id.*

The unique issues presented by Lincoln's counterclaims, *inter alia*, caused Mr. Sciarretta to believe that Mr. David should have assistance in pursuing this litigation through trial. *Id.* ¶ 14. Mr. David is a solo practitioner, licensed to practice law in Florida, who had not frequently litigated STOLI-type cases against large life insurance companies, like Lincoln, that were represented by large law firms, like Drinker. *Id.* ¶ 15. Following the denial of the motion to dismiss, Mr. David was suddenly undermanned by an aggressive discovery schedule against Drinker. *Id.* Mr. David told Mr. Sciarretta that he needed help completing discovery and preparing this case for trial against Drinker and Lincoln. *Id.*

Mr. Sciarretta discussed the issue with Imperial and Imperial recommended that the Trust retain Arent Fox LLP, specifically Jule Rousseau and his team, to enter an appearance as counsel of record (*pro hac vice*) and assist with the defense of this case on behalf of the Trust. *Id.* ¶ 16. Mr. Sciarretta reviewed Arent Fox's (specifically, Jule Rousseau's) credentials and experience litigating STOLI-type cases against large insurance companies and learned that Mr. Rousseau and his team have been involved in numerous such cases, including a significant number in which the Drinker firm was adversary counsel. *Id.*; Declaration of Julius A. Rousseau, III ("Rousseau Decl."), submitted herewith, ¶ 8; Declaration of James. M. Westerlind ("Westerlind

5

Decl."), submitted herewith, ¶¶ 5-6. Mr. Sciarretta concluded that Mr. David needed the assistance, experience and expertise, as well as resources, that Arent Fox could provide in this matter. Sciarretta Decl. ¶ 16. Thus, in his capacity as co-trustee for the Trust, and after careful consideration (including his correct presumption that the hourly rates that would be charged by Arent Fox would be far less than the amount that the Trust would have had to pay to a contingency fee lawyer if successful),[2] Mr. Sciarretta retained Arent Fox to represent the Trust in this matter. *Id.* A copy of the Trust's engagement letter with Arent Fox is attached to the Sciarretta Decl. as Exh. C.

Mr. Sciarretta is satisfied with the work and results provided by Arent Fox and Mr. David in this matter. *Id.* ¶ 17. On October 3, 2011, Arent Fox was asked to assist Mr. David with this case. *Id.*; Rousseau Decl. ¶ 6. The next day, Mr. Westerlind (an attorney with over 10 years experience) flew from New York to south Florida to assist Mr. David with a number of depositions that occurred that week, and following his admission in this case *pro hac vice* on October 6, 2011, took the deposition of Jordan Carriera, Lincoln's Chief Underwriter, produced by Lincoln as a corporate representative to testify in response to a Rule 30(b)(6) deposition notice served by the Trust, on Friday of that week. Westerlind Decl. ¶ 7.

Arent Fox has substantial experience in litigating cases on behalf of life insurance trusts that have sought to recover the death benefits owed on life insurance policies owned by those trusts. Rousseau Decl. ¶¶ 8-9, 22-23, 33. Its lawyers who were admitted *pro hac vice* in this case on behalf of the Trust have been involved in numerous such cases where the life insurer has sought to rescind the subject policy, alleging that there were material misrepresentations made in the application for the policy and that the policy was procured as part of a STOLI scheme – the

---

[2] The total legal fees and expenses claimed in this motion is $1,284,271.00, far less than $2 million.

6

very allegations asserted by the defendant in its counterclaim in this action. *Id*. They are familiar with the legal issues and, most importantly, they have spent significant time reviewing documents produced by the parties in such cases and know the key areas of inquiry relating to those legal issues. *Id.*

The reasonable and necessary services provided by Arent Fox and Mr. David in pursuing the death claim on behalf of the Trust is set forth in detail in the records attached to the Rousseau Decl. as Exhs. A and B.

Both Mr. Sciarretta, and Richard Breit (the current co-trustee of the Trust) believe that the work performed and time billed by the lawyers at Arent Fox (all of whom were admitted *pro hac vice*, as they are all based in New York) and Thomas David (a Florida attorney) was all reasonable and necessary (including the rates charged by each of the lawyers) to achieve the successful result for the Trust in this action. Sciarretta Decl. ¶¶ 17-19; Declaration of Richard H. Breit ("Breit Decl.") ¶¶ 6-8.

## ARGUMENT

A.  **Plaintiff is Entitled to Recover Attorneys' Fees From Defendant Under Fla. Stat. § 627.428(1)**

Pursuant to Fla. Stat. § 627.428(1) Lincoln is required to reimburse reasonable attorneys' fees and expenses:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recover is hand.

Awardable fees include the "time and labor of any legal assistants who contributed nonclerical, meaningful legal support." Fla. Stat. § 57.104.

7

NYC/661987.7

According to the Florida Supreme Court, the purpose of Fla. Stat. § 627.428(1) is to "level the playing field so that the economic power of the insurance companies is not so overwhelming that injustice may be encouraged because people will not have the necessary means to seek redress in the courts." *Ivey v. Allstate Ins. Co.*, 774 So. 2d 679, 684 (Fla. 2000). In this case, leveling the field means that the Trust was entitled to retain, and be reimbursed for the fees charged by a law firm with experience similar to the carrier's counsel – a large national firm that handles similar "STOLI" disputes around the country.

Plaintiff pled a claim for attorneys' fees pursuant to Fla. Stat. § 627.428(1) in the Complaint. *See* D.E. 1. The jury found for Plaintiff and rejected Lincoln's counterclaims and defenses. *See* D.E. 150. Final judgment has been entered in Plaintiff's favor, which makes it the prevailing party in this case. *See* D.E. 162. Therefore, under Florida law, which applies in this diversity case, the Trust is entitled to recover its reasonable and necessary attorneys' fees and expenses from Lincoln. *See Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1359 (11th Cir. 1982).

**B.     The Lodestar Method and Rule 4-1.5 of the Rules Regulating the Florida Bar**

This Circuit has adopted the lodestar approach in determining an award of attorneys' fees. *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1298-1302 (11th Cir.1988). To establish a lodestar amount, the court must ascertain the number of hours an attorney reasonably expended on the litigation and multiply that figure by a reasonable hourly rate. *Id*. at 1302; *see also Tang How v. Gerrits, Inc.*, 756 F. Supp. 1540, 1543-44 (S.D. Fla. 1991); *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145, 1149 (Fla. 1985) *holding modified by*, *Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828 (Fla. 1990) (reaffirming decision in *Rowe* concerning lodestar approach as basic starting point).

The factors considered in determining the lodestar amount are contained in Rule 4-1.5 of the Rules Regulating the Florida Bar, and include the following:

1. The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2. The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

3. The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

4. The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

5. The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

6. The nature and length of the professional relationship with the client;

7. The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

8. Whether the fee is fixed or contingent.

See *Rowe*, 472 So.2d at 1150 (recognizing that, in determining the fee, courts should apply those factors enunciated in the Rules Regulating the Florida Bar).

### 1. Relevant Factors in this Case

The Trust is asking that the Court, in order to "level the playing field," require Lincoln to reimburse the fees at the rates actually charged by counsel, not at rates that this court has frequently applied in other cases. The overwriting reason why the court should allow the actual charge rates is the public policy of the state of Florida as set forth in the statute and as annunciated by the Supreme Court in *Ivey*. The lodestar factors support such a determination.

9

NYC/661987.7

This case required a significant amount of time and labor in a short period of time and the novelty, complexity and difficulty of the questions involved related to the fact that this case involves a very nuanced area of both law and practical experience in the life insurance realm for which only a few law firms have the type of background knowledge and experience as Lincoln's law firm brought to the case. To be sure, under Florida law, the Trust was entitled to retain a firm with similar background and experienced, and in order to unravel the mysteries of the Lincoln underwriting process, which the jury found to be very crucial in its determination, that experience was highly important.

While the amount in dispute - $5,000,000 – is not a significant amount to the defendant and to many corporate litigants before this court, it was certainly a significant amount to the Trust, which has been established for the benefit of the widow and children of the deceased insured. To them, the significance and amount in dispute was extraordinary.

Another potentially relevant lodestar factor relates to the experience, reputation, diligence and ability of the lawyers involved. While undersigned counsel are reluctant to suggest that they actually produced at a superior level, the declaration of the client, Richard Breit, certainly speaks to this lodestar matter. *See* Breit Decl. ¶¶ 4, 6-8.

Under the foregoing factors, the Trust is entitled to receive compensation for the fees it actually incurred, at the rates it actually has paid, or will pay, without reduction for any local custom or standard.

2. **Reasonable Hourly Rate**

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). A court may make a fee award based on its own experience, *id.* at 1303, as it is an expert in this area and

NYC/661987.7

may rely on "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). The declarations of Messr. Breit, David and Rousseau support the fact that the fees actually charged are within the prevailing market rate in the relevant legal community, which would be Miami, Florida and the other major cities along the east coast. *See* Declaration of Thomas David ("David Decl.") submitted herewith, ¶ 11; Breit Decl. ¶ 5; Rousseau Decl. ¶¶ 25-32. Since Drinker is based in Philadelphia and has offices in New York, Washington, D.C., and Wilmington, Delaware, and since Arent Fox is based in Washington with New York lawyers involved in the case, comparing all of these rates seems to be within the "relevant" legal community.

### 3. Reasonable Time Expended

The reasonableness of hours expended by plaintiff's counsel is also a consideration. A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *See Norman*, 836 F.2d at 1303. "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Id.* at 1301. Thus, fee applicants must use "billing judgment." *Id.* In ascertaining the number of reasonable hours, a court must deduct "'excessive, redundant or otherwise unnecessary hours'" from those claimed. *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Thus, as stated by the Eleventh Circuit, the test for determining whether the number of hours "reasonably expended" is whether it would be reasonable to bill a client for these hours. *Norman*. 836 F.2d at 1301. Here, all of the hours specified by the Trust's attorneys through March 2, 2012 have, in fact, been billed to Imperial and have been paid; the remaining time is in the process of being paid in the ordinary course.

11

NYC/661987.7

4.     **The Number of Hours Expended and Applicable Rates**

In determining what constitutes "reasonable hours" spent on a case under the lodestar method, courts have held that "[w]ork performed by multiple attorneys is not subject to reduction where the attorneys were not unreasonably doing the same work." *Webster Greenthumb Co. v. Fulton County*, 112 F. Supp. 2d 1339, 1350 (N.D. Ga. 2000). "Compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment." *Id*. (citations omitted). Furthermore, "the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney." *Id*. (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)).

5.     **Application of Lodestar**

Applying the lodestar, under the guidance of the Florida legislature in Supreme Court entitles Plaintiff to be fully reimbursed for the fees and expenses it has incurred. As demonstrated by the attached declarations, the attorneys and other legal staff involved brought significant legal experience, and the years and level of experience compared with the billing rates in the relevant community are well within normal range. Plaintiff was successful in trial on a novel area of issue of law that had been enunciated for the first time during the middle of discovery when the *Brasner* decision was entered in November 2011, and the parties in the court essentially created a set of jury instructions to apply to the case. Against significant odds and substantial volume of evidence submitted by Lincoln, the Plaintiff was able to prevail due in no small measure to the fact that it had leveled the playing field and had brought in to represent it attorneys who had equivalent levels of knowledge background and insight into the nuanced areas

of law and fact presented by the case. Under all of the relevant lodestar factors, then, the fees sought are quite reasonable.

Beginning in April of 2011, Arent Fox and Thomas David spent the following number of attorney hours and paralegal hours pursuing the instant case against Lincoln:

| Timekeeper | Rate | Hours | Amount |
|---|---|---|---|
| Tom David | $400 | 326.8 | $130,720.00 |
| Julius Rousseau | $750 | 359.1 | $269,325.00 |
| James Westerlind | $590 | 823.0 | $485,570.00 |
| Eric Biderman | $450 | 339.2 | $152,640.00 |
| Krista Ellis | $450 | 196.4 | $88,380.00 |
| Desiree Morris | $255 | 258.6 | $65,943.00 |
| David Yearwood | $265 | 95.2 | $25,228.00 |
| Margery Narcisse | $255 | 4.5 | $1,147.50 |
| Chavah Gully | $255 | 4.6 | $1,173.00 |
| Matthew Kitson | $400 | 17.1 | $6,840.00 |
| Elizabeth Hall | $335 | 6.3 | $2,110 |
| **TOTAL** | | **2,430.8** | **$1,229,077.00** |

As set forth in the billing worksheet attached as Exhibit A to the Rousseau Decl., the total amount billed by Arent Fox and Thomas David for attorney and paralegal fees is $1,229,077.00. The total number of attorneys and paralegal hours expended by Arent Fox is 2,104.0 hours. The total number of attorney hours expended by Thomas David is 326.8 hours. *See* Rousseau Decl., Exh. A.

NYC/661987.7

The hourly fee rates and the number of hours expended in this case, as set forth in Exhibit A to the Rousseau Declaration, are reasonable and appropriate for the services rendered in this case considering the lodestar factors and factors set forth in Rule 4-1.5(b) of the Rules Regulating the Florida Bar and other sources. *See* Rousseau Decl. ¶¶ 20-33, David Decl. ¶ 11; Breit Decl. ¶ 5 (stating that fees billed by Mr. Rousseau and Mr. Westerlind are comparable to those billed by attorneys in the Southern District of Florida working at mid- to large-sized national law firms, like Arent Fox).

**C.    COSTS**

In addition to the attorneys' fees described above, Plaintiff is also entitled to recover expenses not taxable under 28 U.S.C. § 1920. Beginning in April of 2011, Arent Fox and Thomas David incurred the following costs and expenses (as detailed in Exhibit B to the Rouuseau Decl.):

| Description | Billed Amount |
|---|---:|
| POSTAGE/MESSENGER/ OVERNIGHT DELIVERY | 2,414.55 |
| DUPLICATING/ PRINTING | 12,134.93 |
| WESTLAW/ DATABASE SEARCH | 2,819.73 |
| PHONE CHARGES | 238.15 |
| PROFESSIONAL SERVICE FEES | 1,558.17 |
| TRIAL GRAPHIX | 22,059.41 |
| TRANSCRIPT | 11,676.15 |
| **TOTAL** | **$52,901.09** |

**CONCLUSION**

Wherefore, Plaintiff respectfully requests that the Court grant Plaintiff's motion for fees and award the fees as outlined, as well as any other and further relief the Court deems necessary and proper.

NYC/661987.7

## **LOCAL RULE 7.3(b) CERTIFICATION OF GOOD FAITH EFFORT**

Counsel for Plaintiff hereby certifies that he has conferred with opposing counsel in a good faith effort to agree on the amount of fees and costs sought in this motion.  *See* David Decl. ¶¶ 12-16; Exh. A to David Decl.  On May 2, 2012, at least thirty days prior to the deadline for filing the instant motion, Plaintiff served a draft motion compliant with Local Rule 7.3(a)(1)-(8) on defendant.[3]  David Decl. ¶ 12.  While the parties agree that the trust is entitled to recover reasonable attorneys' fees and expenses under Fla. Stat. § 627.428(1), Lincoln's counsel has indicated that it objects to this motion in that (1) it lacks sufficient detail for defendant to determine whether the fees are reasonable and (2) the hourly rates exceed the prevailing market rate in the Southern District of Florida.  *Id*.  Lincoln provided two written responses during the meet and confer period, on May 10 and May 14, 2012.  *Id*. at ¶ 12, 15.  In neither response did Lincoln raise any objections to the costs and expenses sought by the trust.  *Id*. at ¶ 17.  With respect to hourly rates, Lincoln has taken the position that the prevailing market rates in the Southern District of Florida are $425 for partners, $225 for associates, and $125 for paralegals.  *Id*. at ¶ 12.  With respect to time entries, defendant has refused to identify those time entries to which it objects because it claims that the trust has provided insufficient detail, but has stated that it likely would object to (1) the participation and attendance of two attorneys at depositions;[4]

---

[3]  Indeed, even before the draft motion was due to be served on defendant, plaintiff reached out to defendant to agree on the amount of fees and/or the hourly rates of plaintiff's attorneys.  Lincoln refused to come to an agreement either on the hours spent by or the hourly rates of Tom David and Arent Fox's timekeepers.  See Rousseau Dec. ¶ 38.

[4]  Plaintiff's draft motion already had removed some time where more than one attorney attended a deposition.  However, based on Lincoln's comment, the trust removed additional Tom David time.  In this motion, Tom David's time spent at both the Dennis Felcher and Larry Bryan depositions has been removed.  The trust is only seeking fees for the participation and attendance of two attorneys during the first week of Arent Fox's participation in the case.  As detailed in this motion and in the Westerlind Declaration, Arent Fox became involved in the matter on Monday, October 3, 2011.  The next day, Mr. Westerlind flew to Florida to assist Mr. David with a number of depositions that occurred that week, and following his admission in this case *pro hac vice* on October 6, 2011, took the deposition of Jordan Carriera, Lincoln's Chief Underwriter, produced by Lincoln as a corporate representative to testify in response to a Rule 30(b)(6) deposition notice served by the Trust, on Friday of that week.  Westerlind Decl. ¶ 7.

NYC/661987.7

and (2) pursuing other policyholder discovery and preparing that issue for trial because the Court ruled inadmissible at trial evidence of other Lincoln policies.[5]  *Id*. at ¶ 15.

## VERIFICATION OF COUNSEL

Pursuant to 28 U.S.C. § 1746, the undersigned attorney hereby swears, affirms, and verifies under penalty of perjury that he has reviewed the expense records and supporting data to Plaintiff's Verified Motion for Attorney's Fees and Costs, that this motion is well grounded in fact and justified, and that the statements made in this Verified Motion for Attorney's Fees and Costs are true and correct to the best of the undersigned attorney's knowledge.

Dated:  JUNE 1, 2012

        ARENT FOX LLP

        By: ____/s/ Julius A. Rousseau, III_____
            Julius A. Rousseau III (*pro hac vice*)
            James M. Westerlind (*pro hac vice*)
            Eric Biderman (*pro hac vice*)

        1675 Broadway
        New York, NY 10019
        Telephone: (212) 484-3900
        Facsimile: (212) 484-3990
        Email: Westerlind.James@arentfox.com
        Email: Rousseau.Jule@arentfox.com
        Email: Biderman.Eric@arentfox.com

        *Attorneys for The Barton Cotton Irrevocable Trust a/k/a the Amended and Restated Barton Cotton Irrevocable Trust, and Steven A. Sciarretta and Sanford Muchnick in their capacities as trustees*

        Thomas L. David, P.A.
        Thomas L. David
        Florida Bar No.: 213969
        4800 LeJeune Road

---

[5] The trust rejects this argument because evidence concerning other Lincoln policies was attached to plaintiff's successful summary judgment motion and witnesses testified about other Lincoln policies at trial.

16

NYC/661987.7

Coral Gables, FL  33146
Tel. (305) 371-6600
Fax: (305) 667-8015
E-mail: td@davidcapital.com

*Attorney for*
*Steven A. Sciarretta and Sanford Muchnick*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 1, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

>Wendy Lynn Furman
>Pett Furman PL
>2101 NW Corporate Boulevard
>Suite 316
>Boca Raton, FL 33431-7343
>(561) 994-4311
>(561) 982-8985 (fax)
>wfurman@pettfurman.com
>
>Charles J. Vinicombe (*pro hac vice*)
>Drinker Biddle & Reath LLP
>Suite 300
>105 College Road
>Princeton, NJ 08542-0627
>(609) 716-6500
>charles.vinicombe@dbr.com
>
>Michael D. Rafalko (*pro hac vice*)
>Nolan B. Tully (*pro hac vice*)
>Nicole C. Wixted *(pro hac vice)*
>Drinker, Biddle & Reath, LLP
>One Logan Square
>Suite 2000
>Philadelphia, PA 19103
>(215) 988-2700
>michael.rafalko@dbr.com
>nolan.tully@dbr.com
>nicole.wixted@dbr.com
>
>*Attorneys for Defendant*
>*The Lincoln National Life Insurance Company*

                                                    __/s/ Thomas L David___
                                                      Thomas L. David

NYC/661987.7