UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STEVEN A. SCIARRETTA, as Trustee of the Barton Cotton Irrevocable Trust,<br><br>          Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>          Defendant/Counterclaim Plaintiff/Third-Party Plaintiff<br><br>v.<br><br>SANFORD MUCHNICK, an Individual, and as Trustee of the Barton Cotton Irrevocable Trust,<br><br>          Third-Party Defendant. | CASE NO.: 9:11-cv-80427-MIDDLEBROOKS-BRANNON<br><br>**DECLARATION OF JULIUS A. ROUSSEAU III** |

Julius A. Rousseau, declares pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a partner with Arent Fox LLP ("Arent Fox"), counsel for the plaintiff trust in the above-referenced action. I have personal knowledge of the information set forth herein and am competent to provide the opinions, if called to testify, I could and would testify consistently with the statements made in this declaration. I submit this declaration in support of plaintiff's Verified Motion for Attorneys' Fees and Costs and Incorporated Memorandum of Law in Support, pursuant to Fla. Stat. § 627.428(1).

2.      For much of my 28-year career, I have acted as lead trial and appellate counsel in commercial litigation involving insurance. I have practiced in both North Carolina and New

1

NYC/662703.6

York and have appeared pro hac vice in cases in many states, including California, Texas, Illinois, Missouri, Virginia and Florida.

3.  In early October 2011, Arent Fox was engaged by Imperial Trading and Finance ("Imperial") to represent it in a variety of capacities, including working with the attorney previously engaged to represent the plaintiff trust, Tom David, in the instant matter. I read the Loan Agreement for Litigation Expenses ("LALE," attached as Exh. B to the Declaration of Steven A. Sciarretta) between the trust and Imperial and understood that, with the consent of the trustee, we would participate in the litigation with Mr. David going forward. The engagement between Arent Fox and Imperial was based on the firm's standard billing rates for the attorneys who may work on various matters in the course of the representation, and the legal rates that I and my colleagues who were involved in the instant proceeding billed were the rates that Imperial had agreed to pay. Those rates were agreed to be between $775 per hour to $280 per hour, with my rate being $750 per hour, and other partners or associates at varying rates based on their level of experience (specifically, other partners in the range of $600-650 and associates from $350 to 600 per hour). Since our engagement by Imperial, we have been guided by that agreement as to billing rates for all legal work we have conducted for Imperial or on its mutual behalf with other parties, such as the trust here.

4.  In discussions with the trustee, Mr. Sciarretta, I advised him that we would be billing at the firm's standard rates previously agreed with Imperial.

5.  The rates charged in this matter were in the range of Arent Fox's customary billing rates for partners, associates and paralegals. Arent Fox acts for clients in commercial litigation matters -- including complex insurance litigation matters — throughout the United

States. Those rates are fair and reasonable and have been regularly accepted by clients for work similar to that provided in this matter.

6. In the instant case, I first became involved on October 3, 2011. On October 6, 2011, I made a motion to appear *pro have vice*, as did my colleagues James Westerlind and Eric Biderman. These motions were granted on October 6, 2011.

7. Plaintiff formally retained the services of Arent Fox on November 4, 2011. A copy of the trust's engagement letter with Arent Fox is attached to the Sciarretta Decl. as Exh. C.

. 8. Based on my discussions with our clients at Imperial and the trust, I understood that Arent Fox was retained to represent and advise Imperial, and represent the trust in the instant case, because of the firm's and my general experience in insurance matters, particularly ones relating to premium finance and life settlement law and procedure, and in the internal practices and strategies of life insurance companies like the defendant. In recent years, hundreds of lawsuits have been filed seeking to resolve the validity of life insurance policies where the issuing carrier has asserted that unlawful actions of various parties, including insureds, trusts, licensed brokers and agents, and third parties, allow the carrier to rescind the policies, using the derogatory term "STOLI" as a description of the allegedly unlawful conduct. I and my colleagues have been involved in approximately 60 cases involving STOLI or similar issues, at least from the standpoint of one party, and most of these 60 cases involved carriers as parties or interested parties. Through this extensive practice, which is part of our insurance practice but not the sole aspect of it, we became very familiar with defendant's counsel, the Drinker, Biddle & Reath, LLP ("Drinker") firm, and defense counsel Mr. Vinicombe in particular, because of other cases in which he and I, or his and my colleagues, have been involved as adversaries in

recent years. Our firms have had close to 20 cases of this nature in which we were adversaries and litigated various so-called STOLI issues, and I have seen Drinker and Mr. Vinicombe act as counsel in tens of other cases, including of course the highly relevant *Pruco Life Ins. Co. v. Brasner* case, 10-80804-CIV-COHN, 2011 WL 134056 (S.D. Fla. Jan. 7, 2011), where our firm was not involved. I understand that Drinker represents Lincoln nationally in cases involving STOLI allegations, and also represents at least five other large insurance carriers in similar capacities nationwide. It was due to my and my firm's concentration in cases of these types and experience over the years, plus the fact that carriers use Drinker and thus have access to that firm's tremendous collective knowledge and experience, among other factors, that led Imperial to engage us and brought us into this matter.

9. When we appeared in the case, the discovery period was about to expire, though it was briefly extended. The parties were in the midst of a relatively heavy deposition schedule and the upcoming briefing and trial preparation schedule was significant. I decided that Mr. David and I would be assisted by an experienced trial lawyer in my firm, James Westerlind, who would take the lead in discovery and depositions, and by our colleague, Eric Biderman, who would analyze the thousands of pages of documents produced by the parties and various third parties, as well as the legal issues resulting from the *Brasner* decision and other relevant cases, and that both of them would be necessary to prepare the case for trial. Both Mr. Westerlind and Mr. Biderman have extensive experience in cases of this nature, including working with me and our firm on most of the 60 cases we have handled as well as the 20 other cases with Drinker, as well as much knowledge they have developed over the years in our practice about the practices of life insurance companies like Lincoln. In fact, all three of us have specific litigation experience with Lincoln, having been involved in cases involving that company and having

NYC/662703.6

become privy to certain public information that assists us in general, which assisted us specifically in this case, in collecting the death claim.

10.     In this matter, I have been and remain the principal Arent Fox attorney responsible for coordinating and supervising the representation of plaintiff's interests and the billing of legal fees and expenses. I have reviewed both Mr. David's and Arent Fox's time and billing records for this matter and determined that plaintiff's Verified Motion for Attorneys' Fees and Costs and Incorporated Memorandum of Law in Support set forth herein is well grounded in fact and justified.

11.     Both Mr. David and Arent Fox submitted monthly detailed time records as part of their invoices to the trust. Those invoices were paid in full, except for the most recent that are pending for payment, by Imperial under the terms of the LALE. As discussed below, we have reviewed these invoices and have removed time that is not compensable in this motion. The systems that are used to generate the invoices do not permit such invoices to be manipulated. Therefore, despite the fact that plaintiff is not seeking fees for time spent on various tasks, the trust is not able to provide revised invoices due to the invoice systems used by Mr. David and Arent Fox. Furthermore, the detailed billing invoices contain much information that I consider to be attorney work product and, in some instances, to convey privileged information. Particularly, the description of work that was done, sources that were reviewed, individuals who were interviewed, and the timing of this work is, in my opinion, highly confidential attorney work product. Accordingly, we are not able to submit those detailed billing records with this motion, but would be willing to submit those to the Court for *in camera* review if necessary. Instead, and to provide the Court and opposing counsel with the same type of detail, we have included a new worksheet (attached hereto as Exhibit A) showing the daily time and the general

5

NYC/662703.6

description of the services provided, summarized each timekeeper's narrative using several categories of tasks. During the Local Rule 7.3 (b) meet and confer period, the trust provided defendant with redacted billing invoices to show defendant that Exhibit A provides the same type of detail as the redacted invoices and meets the requirements of Local Rule 7.3(a). As detailed in Exhibit A, the total time spent and fees incurred are roughly divided into the following categories:

| Category | Hours | Amount |
| --- | --- | --- |
| Analyzed issues | 123.5 | $65,918.50 |
| Prepare pleadings | 14.4 | $6,181.50 |
| Discovery | 407.4 | $184,830.83 |
| Document review | 201.4 | $94,868.17 |
| Depositions | 236.8 | $135,694.50 |
| Legal research | 174.1 | $77,661.33 |
| Motion for Summary Judgment | 312.2 | $167,340.08 |
| Pre-trial motions | 61.0 | $32,731.50 |
| Pre-trial submissions | 157.0 | $84,261.92 |
| Trial preparation | 532.6 | $262,793.33 |
| Trial | 128.2 | $73,977.50 |

NYC/662703.6

| Category | Hours | Amount |
|---|---|---|
| Other (Time Spent by Mr. David before Arent Fox joined the case) | 24.1 | $9,633.33 |
| Rule 50 Motion | 58.1 | $33,184.50 |
| **TOTAL** | **2,430.8** | **$1,229,077.00** |

12.     The category "analyzed issues" includes time developing case strategy throughout the process, including time spent primarily by Mr. David, Mr. Westerlind, and myself in productive attorney discussions and strategy sessions, and reviewing various issues concerning handling the case, witnesses, and schedule, and is an area where greater detail would reveal work product. "Prepare pleadings" includes time spent in pre-litigation in preparation of filing the lawsuit, drafting the Complaint, and answering the Counterclaims. "Discovery" includes time spent preparing and responding to discovery requests and moving to compel defendant to produce documents. "Document review" includes the time spent reviewing defendant's document production. "Depositions" includes the time spent preparing for, taking, and defending depositions. "Legal research" includes the time spent conducting research on the various legal issues that arose in the case, including incontestability, Florida viatical and life settlement law, materiality, insurable interest, misrepresentations, and evidentiary and procedural issues, as well as research needed to prepare the Complaint, respond to the Counterclaims, and prepare the various pre-trial briefs. "Motion for Summary Judgment" includes the time spent drafting and reviewing plaintiff's summary judgment motion, as well as time spent opposing defendant's summary judgment motion. "Pre-trial motions" includes time spent drafting and reviewing motions made in advance of trial, including the parties' motions in limine and motion to use equipment in the courtroom, and responding to defendant's motion to delay the trial start date.

NYC/662703.6

"Pre-trial submissions" included time spent drafting, reviewing, and responding to submissions made in advance of trial, including the pre-trial stipulation, witness lists, deposition designations, and proposed jury instructions. "Trial preparation" includes time spent preparing for trial, including determining trial strategy, preparing exhibits for trial, preparing witness kits, preparing for direct and cross examination of witnesses, gathering research for key legal issues in the case, preparing for opening and closing statements, and preparing for jury selection. "Trial" includes time spent at the trial. "Other" includes time spent by Tom David prior to Arent Fox joining the case team, including time spent on pre-litigation services in preparation of filing the lawsuit, mediation, and communications with opposing counsel. "Rule 50 Motion" includes the time spend responding to the Rule 50 motion for judgment as a matter of law brought by Lincoln in April 2012 [D.E. 166].

13.     We have reviewed all billing entries to ensure that the time charges do not include time that would not be compensable. The amount we are seeking does not include:

- Time spent by Mr. David in connection with the motion to dismiss the case under FRCP 12(b)(6), which the Court denied;

- Time spent by Mr. David at the depositions of Dennis Felcher and Larry Bryan;

- Time spent by Mr. David in connection with his work on behalf of his other client, Sanford Muchnick, including but not limited to time spent on a motion for summary judgment for Mr. Muchnick that was denied;

- Time spent by Arent Fox in connection with its work on behalf of its other client, Imperial; and

- Time spent by Mr. David and Arent Fox traveling or for any associated travel expenses.

14. Thus, the summary attached hereto as Exhibit A reflects the time spent by Mr. David and Arent Fox solely in connection with representing the trust in this matter.

15. The billing rates being sought in connection with this motion of Tom David and each Arent Fox attorney and paralegal who performed work on this case are as follows:

| Timekeeper | Rate |
| --- | --- |
| Tom David | $400 |
| Julius Rousseau | $750 |
| James Westerlind | $590 |
| Eric Biderman | $450 |
| Krista Ellis | $450 |
| Desiree Morris | $255 |
| David Yearwood | $265 |
| Margery Narcisse | $255 |
| Chavah Gully | $255 |
| Matthew Kitson | $400 |

16. The trust has incurred the following legal fees in connection with this litigation:

    a. Arent Fox    $1,111,753.00

    b. Tom David    $172,520.00

9

NYC/662703.6

17. With the appropriate reductions as outlined above, the reasonable sum as fees or compensation to the trust, pursuant to Florida Statute 627.428(1), is as follows:

    a. Arent Fox         $1,098,357.00 (2,104.0 hours)

    b. Tom David       $130,720.00 (326.8 hours).[1]

18. The total time spent and fees incurred by Tom David and Arent Fox for each Arent Fox attorney and paralegal who performed work on this case is as follows:

| Timekeeper | Rate | Hours | Amount |
| --- | --- | --- | --- |
| Tom David | $400 | 326.8 | $130,720.00 |
| Julius Rousseau | $750 | 359.1 | $269,325.00 |
| James Westerlind | $590 | 823.0 | $485,570.00 |
| Eric Biderman | $450 | 339.2 | $152,640.00 |
| Krista Ellis | $450 | 196.4 | $88,380.00 |
| Desiree Morris | $255 | 258.6 | $65,943.00 |
| David Yearwood | $265 | 95.2 | $25,228.00 |
| Margery Narcisse | $255 | 4.5 | $1,147.50 |
| Chavah Gully | $255 | 4.6 | $1,173.00 |
| Matthew Kitson | $400 | 17.1 | $6,840.00 |
| Elizabeth Hall | $335 | 6.3 | $2,110 |
| **TOTAL** | | **2,430.8** | **$1,229,077.00** |

---

[1] Plaintiff reserves the right to supplement this total to account for additional attorneys' fees and costs incurred subsequent to the time entries submitted herewith.

10

19. The approximate time spent by Tom David and each Arent Fox attorney and paralegal by category of task completed is as follows:

|  | JAR | JMW | TLD | EAB | KME | MJK | EEH | DM | DY | CG | MN | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Analyzed issues | 23.5 | 42.2 | 52.4 | 5.5 |  |  |  |  |  |  |  | 123.5 |
| Prepare pleadings |  | 1.9 | 11.1 | 1.4 |  |  |  |  |  |  |  | 14.4 |
| Discovery | 19.8 | 122.1 | 79.3 | 91.0 | 3.0 |  |  | 43.8 | 44.2 | 2.1 | 2.3 | 407.4 |
| Document review | 15.7 | 87.9 | 5.7 | 27.8 |  |  |  | 58.8 | 3.1 | 2.5 |  | 201.4 |
| Depositions | 39.1 | 149.8 | 36.3 | 2.5 |  |  |  | 5.5 | 3.7 |  |  | 236.8 |
| Legal research | 1.7 | 5.9 | 15.1 | 60.5 | 71.9 | 17.1 |  | 2.0 |  |  |  | 174.1 |
| Motion for Summary Judgment | 63.5 | 94.0 | 23.6 | 107.0 | 2.7 |  |  | 21.5 |  |  |  | 312.2 |
| Pre-trial motions | 4.8 | 29.7 | 5.9 | 1.0 | 19.6 |  |  |  |  |  |  | 61.0 |
| Pre-trial submissions | 21.7 | 58.2 | 2.7 | 7.8 | 61.7 |  |  |  | 4.9 |  |  | 157.0 |
| Trial preparation; | 119.8 | 147.4 | 29.0 | 33.2 | 37.0 |  |  | 124.6 | 39.4 |  | 2.2 | 532.6 |
| Trial | 42.0 | 44.0 | 39.7 |  |  |  |  | 2.5 |  |  |  | 128.2 |
| Other |  |  | 24.1 |  |  |  |  |  |  |  |  | 24.1 |
| Rule 50 Motion | 7.5 | 40.1 | 2.0 | 1.7 | 0.5 |  | 6.3 |  |  |  |  | 58.1 |

20. I reviewed the recorded time records relating to the time spent by attorneys and paralegals in connection with the representation of plaintiff in this action. The hours listed in the time records accurately reflect the time spent in connection with this litigation with adjustments as noted above.

11

NYC/662703.6

21. Individually and collectively, the above listed attorneys' fees incurred by the trust (all but the most recent of which have been paid) were reasonable and necessary based upon the nature of the litigation, the amount in controversy, the expertise required, and prevailing rates at similar law firms both in Miami, Florida, as well as along the major cities of the east coast where most of the lawyers involved practice law.

22. The case before the Court was complex insurance litigation that involved not only the allegedly conspiratorial scheme that defendants sought to portray but, importantly to the trust and to the jury, the internal operations of life insurance carriers. These issues included the operations of the defendant, the manner in which defendant's employees conducted the business of the company, including underwriting the policy in question as well as underwriting hundreds of similar policies, interacting with agents and general agents of the company, setting but not seeking to enforce upon those agents certain perimeters and guidelines and attempting to boot-strap unrelated, or contingently related matters – like some unidentified government investigation into Imperial and some general department of insurance investigation into senior life insurance, as well as more mundane issues involving the actual family dynamics and communications within the Cotton family. As discussed above, Arent Fox has substantial experience in cases of this nature. Additionally, Mr. Biderman, Ms. Ellis and other legal staff (including lawyers and paralegals) at Arent Fox are experienced in similar areas. Biographies describing the relevant experience of Arent Fox associates Eric Biderman and Krista Ellis, and paralegals David Yearwood and Desiree Morris and are attached hereto as Exhibits C through F. Additionally, the Declarations of James Westerlind ("Westerlind Decl.") and Tom David ("David Decl."), submitted herewith, describe their respective relevant experience.

23.     As discussed above, I and my colleagues at Arent Fox had been involved in numerous cases similar to the present case, many of which involved the Drinker firm as opposing counsel, a lesser number of which included Lincoln, but most of which included our involvement in learning about and analyzing and using to our client's advantage the procedures, practices, and policies of large insurance companies. In my opinion, it was prudent for Imperial and the trust to engage Arent Fox to assist Mr. David in this case and to bring our experience to bear against Lincoln and Drinker. Mr. David's need for assistance was amplified by the amount and volume of discovery that was to be conducted after the Rule 12(b)(6) motion was denied, and for which Mr. David needed assistance. Sciarretta Decl. ¶¶ 10-16.

24.     Throughout the conduct of the litigation, we strove to minimize fees and expenses to the degree possible without harming the quality of our representation. Several depositions were conducted either by a single lawyer from Arent Fox, or by Mr. David with no Arent Fox attorney in attendance. Mr. David's time at depositions in which an Arent Fox lawyer was present is not being sought in this motion, with the exception of the depositions that took place the week that Arent Fox joined the case. Further, to organize files for review in preparation for depositions and trial, we relied heavily on experienced paralegals, rather than attorneys. The work conducted by the Arent Fox attorneys was all legal work, as opposed to ministerial tasks that could have been assigned to paralegals. The trial team involved only three lawyers.

25.     I am generally familiar with rates charged by firms that are engaged in litigation similar to Arent Fox and Drinker, as well as the firms that have experience similar to this firm's and Drinker's in connection with cases of this nature. With respect to those firms on the east coast, located from Miami to New York, and because of my familiarity with Washington, D.C. rates since Arent Fox has its principal office in that jurisdiction, I can state that in my opinion,

NYC/662703.6

the hourly rates at which Arent Fox and Mr. David billed the trust for legal services were reasonable and customary for attorneys employed by similar law firms handling litigation of this manner and, with respect to Mr. David, for sole practitioners in his area.

26.     The hourly rate that I established with Imperial for my charges in connection with this matter is $750 per hour. I am familiar with the Billing Rate and Associate Salary Survey conducted by PricewaterhouseCoopers LLP ("PwC") of average attorney fees. Arent Fox uses the PwC survey to set its rates for partners, senior attorneys, associates, and paralegals. According to the PwC survey of large Washington, D.C. firms, the median rate for equity partners at my level is $750 per hour as of January 1, 2011.

27.     I am also familiar with attorney fees for a number of persons working in large east coast firms. I have also been provided with a significant amount of information about billing rates in Miami by Mr. David and by the current trustee, Mr. Breit, who has been practicing law for 32 years and has submitted a declaration herewith. It is clear to me that for a person with over 28 years of experience, the rate of $750 is within the reasonable range for attorneys practicing in the major east coast cities, including Miami. Furthermore, in connection with the Local Rule 7.3(b) meet and confer period, defendant provided the trust with Drinker's hourly rates. Defendant represented that Mr. Vinicombe's hourly rate is $495.00 per hour and that he provides Lincoln with a 10% discount on his normal hourly rate.

28.     James Westerlind is an experienced trial lawyer with over ten years experience. He has worked in the same firms that I have for his entire career, and I have observed him almost daily, with supervisory responsibility for a substantial portion of the work that he has performed. His hourly rate of $590 is based on the rates charged within Arent Fox for lawyers with the same amount of experience. According to the PwC survey of large Washington, D.C. firms, the

14

NYC/662703.6

median hourly rate for a senior attorney with over eight years of experience is $548 per hour, with the first quartile rate being $628 per hour, as of January 1, 2011.

29. Arent Fox has charged Mr. Biderman at rates of $450 per hour and higher depending on the client and case and the rate of $450 is reasonable for his work here. Ms. Ellis has been charged out at the same rate due to her experience and the need for substantial assistance on pre-trial matters. Ms. Ellis took over a primary role in this case with respect to pretrial motions and submissions, as well as assisting in trial preparation because Mr. Biderman and his wife celebrated the arrival of their first child in the time frame leading up to trial. Because the issues involving the pre-trial motions were sufficiently discreet, we were able to assign certain tasks to Ms. Ellis that did not require her to spend billable time reviewing background facts and information about this case. Like Mr. Biderman, Ms. Ellis has experience in working on cases of this nature, and she was able to use her general knowledge, as well as her general litigation skills, on the tasks that were assigned to her. According to the PwC survey, the median hourly rate for associates with the experience of Mr. Biderman and Ms. Ellis are over $500 per hour, as of January 1, 2011. According to the information provided by Lincoln, the normal hourly rate for Drinker associate Michael Rafalko, whose experience is comparable to that of Mr. Biderman and Ms. Ellis, is $375.00 per hour.

30. Mr. Kitson is a contract attorney, formerly associated with Arent Fox, who moved with his wife to a city in which Arent Fox does not have offices. He continues to do contract work for the firm because of his capabilities and the confidence that the firm, and I, have in his knowledge and experience. His involvement was relatively limited, and related to specific research questions. The trust is seeking to recover $400 an hour for his work. According to the

NYC/662703.6

information provided by Lincoln, the normal hourly rate for Drinker associates Nolan Tully and Nicole Wixted, whose experience is comparable to that of Mr. Kitson, is $325.00 per hour.

31. The paralegals involved, primarily Desiree Morris and David Yearwood, have a number of years of experience, both with Arent Fox and prior to joining the firm. Their standard rates within the firm, based on their years of experience, is $265 per hour for Mr. Yearwood and $255 for Ms. Morris, which are rates set by Arent Fox to be reasonably comparable to paralegal rates at other firms in the east coast major cities. Their work in handling documents in discovery and in preparing documents for trial was invaluable and helped in saving a number of hours that otherwise would have been expended by attorneys. According to the PwC survey, the median hourly rate for paralegals is $222 per hour, and $275 per hour for paralegals with the experience of Mr. Yearwood and Ms. Morris. Defendant did not provide the hourly rates for Drinker's paralegals during the meet and confer period.

32. Based upon this information, as well as the fact that the rates have been set by Arent Fox on a competitive basis in a highly competitive east coast market, I am confident in stating that these rates were fair and reasonable for the level of services provided by everyone at Arent Fox.

33. The issues involved in the litigation were highly specialized, if not complex. As noted above, we drew upon our prior knowledge and understanding of Lincoln and similar life insurance companies, our understanding of how life insurance business is conducted by general agents and agents, and our knowledge and understanding of the financial markets that generated both premium financing opportunities as well as life settlement opportunities—opportunities that were indirectly involved in the facts and issues before the Court. As noted by both the former and current trustee (each of whom have submitted declarations herewith), the litigation would

NYC/662703.6

normally have been conducted on a contingent fee basis, since a trust with no assets was seeking to collect a large death benefit from a life insurance company. While Arent Fox generally does not do contingent fee work, I understand that for a case of this nature, the standard contingent fee would be 40% (or $2,000,000), an amount substantially greater than the amount sought in this motion.

34. With respect to the costs and expenses incurred by the trust, we have carefully reviewed these charges, and removed certain expenses. The expenses we are seeking in connection with this motion do not include:

- Those costs listed in Plaintiff's Bill of Costs, as amended by Plaintiff's Reply Brief in Support of its Bill of Costs;

- Travel expenses, including out of town lodging;

- Secretarial overtime expenses;

- Overtime meals and taxis; and

- Other meals and transportation expenses.

35. In addition to the legal fees, the expenses incurred by the trust (which are not being sought in the bill of costs previously transmitted to the Court[2]) are as follows:

| Description | Billed Amount |
| --- | ---: |
| POSTAGE/MESSENGER/ OVERNIGHT DELIVERY | 2,414.55 |
| DUPLICATING/ PRINTING | 12,134.93 |
| WESTLAW/ DATABASE SEARCH | 2,819.73 |
| PHONE CHARGES | 238.15 |
| PROFESSIONAL SERVICE FEES | 1,558.17 |
| TRIAL GRAPHIX | 22,059.41 |
| TRANSCRIPT | 11,676.15 |
| **TOTAL** | **$52,901.09** |

---

[2] Lincoln objected to certain costs included in plaintiff's bill of costs and plaintiff agreed to remove those costs from the bill of costs and pursue them instead in this motion.

17

NYC/662703.6

36. These litigation expenses incurred by the trust in this litigation outlined above, and attached hereto as Exhibit B, were reasonable and necessary. Defendant did not object to any of these nontaxable expenses during the Local Rule 7.3(b) meet and confer period. The largest single expense was from a vendor called Trial Graphix which was used to both provide the equipment used in the Court Room for displaying exhibits (an expense that was split with the defendant) and used to organize and display exhibits to the Court and jury. The fees charged by Trial Graphix are competitive fees. Prior to hiring Trial Graphix for this case, we sought several bids and found them to be reasonably priced. Trial Graphix's services were invaluable, and in fact defendant had a similar setup, although a paralegal from Drinker was used rather than an outside vendor. Based on the pricing that we were given, we determined that the expense of the third-party vendor was less than bringing a paralegal to the trial. The other expenses included courier charges, charges for electronic legal research, phone charges, professional service fees, and fees to obtain the trial transcripts.

37. I have reviewed the attached hourly rates, hours worked, and reimbursable expenses. Based upon my experience, the attorneys' fees and costs incurred by Mr. David and Arent Fox on behalf of plaintiff in connection with this case are customary and reasonable. The charges and fees incurred were necessary to the successful protection of plaintiff's rights.

38. Prior to drafting this motion, I tried to come to an agreement with counsel for Lincoln on the amount of fees and expenses that the trust was entitled to, but to date the parties have not been successful.

39.     Pursuant to Local Rule 7.3, plaintiff shared a draft of this motion with defendant in an attempt to agree on the amount of fees and expenses. However, as detailed in the Declaration of Tom David, the parties were not able to agree on the amount of fees to which plaintiff is entitled.

40.     Plaintiff seeks an award of attorneys fees for the work performed by attorneys and paralegals on this case in the amount of $1,229,077.00[3], reserving the right to supplement this total to account for additional attorneys' fees and costs incurred subsequent to the time entries submitted herewith.

I declare under penalty of perjury that the foregoing is true and correct.

Date:   May 31, 2012

_____
JULIUS A. ROUSSEAU III

---

[3] This amount is calculated by taking the total amount of attorneys' fees that Plaintiff incurred and is obligated to pay for its attorneys' work on this case ($1,229,077.00) and adding expenses ($52,901.09).