IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:11-cv-80427-DMM

Steven A. Sciarretta, as trustee of the Barton Cotton Irrevocable Trust a/k/a the Amended and Restated Barton Cotton Irrevocable Trust,

    Plaintiff/ Counterclaim Defendant,

v.

The Lincoln National Life Insurance Company

    Defendant/ Counterclaim Plaintiff/ Third-Party Plaintiff,

v.

Sanford Muchnick, an individual, and as trustee of the Barton Cotton Irrevocable Trust,

    Third-Party Defendant.

**DEFENDANT/COUNTERCLAIM PLAINTIFF/THIRD PARTY PLAINTIFF
THE LINCOLN NATIONAL LIFE INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS MOTION FOR A RULE TO SHOW CAUSE
WHY THE COURT SHOULD NOT IMPOSE SANCTIONS
<u>AGAINST NON-PARTY IMPERIAL PREMIUM FINANCE, LLC</u>**

## INTRODUCTION

Imperial Premium Finance, LLC ("Imperial")'s Response to The Lincoln National Life Insurance Company ("Lincoln")'s Motion for Sanctions [D.E. # 175] ("Response") proves that Imperial's witness was not prepared to answer questions that were highly relevant and probative to Lincoln's case.[1]  The Response does not refute the fact that Imperial's failure to provide testimony on these subjects significantly hampered Lincoln's ability to present its case at trial.  Instead, the Response dismisses all information on which it chose not to educate its witness, John Norris, as "outside the scope" of the topics listed in the deposition and trial subpoenas.  This argument misses the mark.  A review of the topics listed in Lincoln's subpoenas reveals that the questions which Mr. Norris was unable to answer fall squarely within the information sought by Lincoln.[2]

Far from demonstrating that Imperial fulfilled its obligations in response to the subpoenas, the Response confirms that Imperial made the tactical decision to intentionally not prepare Mr. Norris to testify.  Moreover, Imperial argues that its "preparation" of Mr. Norris was sufficient because Imperial and its counsel permitted Mr. Norris 54.8 hours to review and become familiar with a document production in excess of 20,000 pages.  Response, at 5.  Therefore, according to the Response, Mr. Norris was able to "thoroughly and carefully" review over *360 pages per hour* in preparation for testifying as Imperial's corporate designee in this case.  *Id.*  Imperial's assertion that this amounts to thorough preparation is absurd.  Indeed, it only serves to reinforce the Court's comment at trial that "[i]t was pretty clear what side [Mr. Norris] was on.  He couldn't answer any question that the defendant[] asked.  He certainly perked up when [Mr. Rousseau] was asking him

---

[1] For purposes of brevity, Lincoln's Motion for a Rule to Show Cause Why the Court Should Not Impose Sanctions Against Non-Party Imperial Premium Finance, LLC [D.E. # 167] is referred to herein as "Motion for Sanctions."

[2] Imperial also makes the nonsensical argument that it was Lincoln's preference that Mr. Norris not have the answers to its questions.  Response, at 1-2.  Though creative, this theory is disproved by the facts recited in the Response.  As set forth in the Motion for Sanctions, Imperial's witness was unprepared to answer many of Lincoln's questions at his deposition.  Had Lincoln's goal been to simply point to Imperial's lack of knowledge in support of its theory of the case, Lincoln would have accepted Imperial's offer to have Imperial's deposition transcript read into evidence as opposed to insisting on Mr. Norris' attendance at trial.

questions, and all of a sudden, he was more than willing to help." Trial Trans, Day 4, at 3:24-4:2, attached as Exh. 1 to the Declaration of Nolan B. Tully [D.E. # 167].

Put simply, the Response and supporting Declarations only highlight the fact that Imperial made a calculated decision not to provide Mr. Norris with information it believed would be harmful to its position. Imperial took a risk by making this decision; it must now face the consequences.

## ARGUMENT

I.  **The Topics of Testimony Referenced in Lincoln's Motion For Sanctions Fall Squarely Within the Topics Listed in the Subpoenas Issued to Imperial**

The primary argument raised by Imperial in the Response is that the Court should not blame Imperial for Mr. Norris' failure to provide substantive testimony to Lincoln and the Court at its deposition and at trial. Instead, utilizing a "blame the victim" argument, Imperial contends that it is *Lincoln's* fault that Imperial did not educate Mr. Norris, because Lincoln did not include the proper topics in its deposition and trial subpoenas.[3] In actuality, Imperial purposely failed to educate Mr. Norris on documents and information detrimental to Imperial's goal of assisting the Plaintiff Barton Cotton Irrevocable Trust (the "Trust") – and consequently its own financial position – at trial. Contrary to the arguments in the Response, each of the documents and questions upon which the Motion for Sanctions is based were encompassed by one or more of the Topics.

A.  Imperial Failed to Educate Mr. Norris on Information Within the Topics

Imperial contends it should be excused from its failure to provide testimony on key documents and information because these documents and information were "outside the . . . Topics." Response, at 9-14. A simple comparison between the deficiencies in Imperial's deposition and trial testimony outlined in the Motion for Sanctions and the Topics illustrates that this assertion is inaccurate. *See* Exhs. 3 and 4 to Tully Decl. [D.E. # 167]. The Topics required Imperial to prepare

---

[3] Lincoln sought testimony from Imperial on identical topics in both its deposition subpoena and its trial subpoena, with identical numbering in both subpoenas (referred to collectively herein as the "Topics").

its witness to testify fully about Imperial's knowledge regarding the: (1) procurement of the Lincoln Policy and related financial transactions (Topics 1, 4, 5, 6, 14 ); (2) financing of the Lincoln Policy (Topics 6, 8, 9, 10, 11 14); (3) Cotton Trust (Topics 2, 3, 7); and (4) actual or contemplated transfer of ownership of the Lincoln Policy (Topics 12, 13, 15, 16, 17).  As set forth in the Motion for Sanctions, each of the documents that Mr. Norris was unable to explain and each of the questions that Mr. Norris was unable to answer fall within one of these four categories of Topics.  Motion for Sanctions, at 11-13.  Imperial's argument to the contrary is nothing more than an *ex post facto* attempt to justify its tactical decision to minimally prepare Mr. Norris in the hope that damaging information would remain hidden during discovery and at trial.

Furthermore, Imperial did not object to the scope of any of the Topics, either prior to its deposition or before trial.  Therefore it was required to prepare its witness as to the full scope of questions that could be asked of Mr. Norris, its designee, on any one of the Topics.  *See Clemons v. Hartford Ins. Co. of Midwest*, Civ. No. 07-8917, 2009 WL 1605154, at *6 (E.D. La. June 5, 2009) ("[t]o the extent that Hartford failed to object to the unaltered topics . . . in the original Notice . . . the Court finds that those objections are waived.").  Imperial cannot reasonably dispute that it failed to prepare its witness to answer the full scope of questions about the Topics – even a cursory review of Imperial's trial and deposition testimony shows that fact.[4]

Finally, Imperial makes the preposterous argument that Lincoln acquiesced to Mr. Norris' level of preparation at Imperial's deposition because Lincoln did not respond to objections made by counsel for Imperial and the Trust that certain questions were "outside the scope" of the Topics. Response, at 6; Westerlind Decl., ¶¶ 13-27.  First, this assertion is false.  On several occasions, counsel for Lincoln responded to the unfounded objections voiced by counsel for the Trust and

---

[4] In its Response, Imperial preposterously claims that "[t]he record is undisputed that the witness thoroughly prepared himself . . . ." Response, at 12.  As the Court appropriately noted at trial, Mr. Norris "was designated as the most knowledgeable person, yet didn't make any effort to gather any facts." Trial Trans., Day 4, at 3:21-23.

Imperial. *See* Imperial Dep. Trans., Conf. Doc. # 25 [D.E. # 71], at 43:14-44:25; 118:1-119:20; 127:4-20. Second, this argument is an improper attempt to impose on Lincoln an obligation that is not required by the Federal Rules of Civil Procedure. Indeed, counsel for Imperial and the Trust were required to note their objections on the record. *See* Fed. R. Civ. P. 30(b)(2). There is no authority, however, for the proposition that Lincoln was required to refute, rebut or challenge these objections on the record. To the contrary, the Federal Rules state that after an objection is stated, "the examination still proceeds; the testimony is taken subject to any objection." *Id.* Accordingly, Imperial's contention that "Lincoln's counsel readily accepted [the] fact" that the its questioning was beyond the scope of Lincoln's the Topics rests on a false premise and should be disregarded.[5]

### B.    The Court Inquired About Information Encompassed by the Topics

At trial, the Court asked Imperial for two basic pieces of information about the loan transaction. First, the Court wanted to know the outstanding balance of the premium finance loan between the Plaintiff and Imperial. This is a question that has repeatedly been asked of Imperial by Mr. Cotton, Patrick Sampley, Lincoln, and the Court. It is a simple question, to which there exists a simple answer. Despite being directly questioned by the Court, Imperial was unable to provide this information to Lincoln or the Court at trial. *See* Trial Trans. Day 3, 179:15-180:11, Exh. 2 to Tully Decl. [D.E. # 167]. Now, however, Imperial contends that Mr. Norris did not need to know this amount because it was "outside the . . . Topics." Response, at 15. This contention is spurious, as the amount of the premium finance loan falls within at least two of the Topics.[6] It is therefore clear that

---

[5] The Response also contends that Lincoln cannot complain about Imperial's testimony because counsel for Lincoln allegedly "complimented" Mr. Norris' preparation. Response, at 1, 3; Westerlind Decl., at ¶ 11. This contention is inaccurate. Lincoln's counsel merely remarked on how it must have been difficult for Mr. Norris to have testified on behalf of a company with which he had no previous knowledge or affiliation. *See* Declaration of Charles J. Vinicombe, at ¶¶ 6-8, attached hereto as Exhibit "A."

[6] Deposition Topic 9 is "any financing arrangements concerning such premium payments [for the Lincoln Policy]," which would obviously include the amount owed pursuant to such financing arrangement. Deposition Topic 11 is "[t]he enforcement or attempted enforcement of any security interest in the Lincoln Policy," which necessarily contemplates that Imperial would educate its witness on the *amount* of any such security interest.

the Topics required Imperial to educate Mr. Norris as to the loan payoff amount, and Imperial simply failed to do so.[7] Imperial's obfuscation on this issue is apparently a deliberate tactic that Imperial has employed as a business practice to deter repayment of loans and to seize its collateral. Recently, on May 23, 2012, another policyholder filed a lawsuit against Imperial making allegations similar to Cotton that Imperial had failed and refused to provide the policyholder with information that would allow the policyholder to pay off a premium finance loan.[8]

Second, Mr. Norris was unable to answer the Court's questions about the reason for the payment from Dennis Felcher, the insurance broker, to Imperial. The Response does not argue that this question does not fall within a Topic – to be sure, it falls squarely within Topic 14[9] – but rather Imperial argues, based only on the purported knowledge of its counsel, Jule Rousseau, that "[c]arriers like Lincoln commonly pay a portion of the broker compensation to the persons who work for lending companies and arrange loans. . . ." Response, at 17. Lincoln is at a loss to understand how this statement justifies or explains Imperial's failure to prepare its witness to answer questions that fall directly within a Topic. Indeed, it is no explanation at all, but rather an attempt to point the finger at Lincoln to divert the Court's attention from Imperial's conduct.[10]

---

[7] Imperial also argues that its failure to answer the Court's question about the amount of the premium financing loan should be excused because "[t]he plaintiff . . . did not see any relevance in the loan payoff amount." Response, at 16. This argument misses the point. Both the Court and Lincoln "saw relevance" in this amount, which was squarely within the purview of the Topics. The fact that Imperial, Plaintiff and their shared counsel do not "see the relevance" in a fact does not permit Imperial to ignore its responsibility to present a knowledgeable witness at trial.

[8] *See* Complaint in *Katersky v. Imperial Premium Finance LLC*; No. CV12-04503, United States District Court, Central District of California. Exhibit B, attached. Although Lincoln is named as a defendant in that action, no affirmative claims have been asserted against Lincoln. Lincoln has only been named as a defendant for purposes of the policyholder's declaratory claim seeking to establish that the policyholder is the true owner of the policy and not Imperial, which is alleged to have improperly and illegally seized ownership of the policy.

[9] Deposition Topic 14 is "[a]ny payments or transfers of funds made to or by [Imperial], Felcher, Sciarretta, Muchnick . . . Bank of Utah, the Cotton Trust, the Amended Trust and/or any of the other Involved Persons relating to the Lincoln Policy or the Cotton Trust."

[10] Imperial also argues that Mr. Norris' failure to answer this question cannot be grounds for sanctions because this question was not referenced in the Motion for Sanctions. Response, at 17. The Motion for Sanctions, however, is based on Imperial's course of conduct throughout the litigation and at trial which, of course, includes its failure to answer this question posed by the Court.

## II. Lincoln Has Not Waived Its Right to Sanctions Based on Imperial's Deposition

In addition to its unavailing arguments that all of the questions that Mr. Norris did not know the answers to were outside the scope of the Topics, Imperial makes the argument that Lincoln has waived its right to seek sanctions based on Imperial's deposition testimony. Imperial's argument on this point is inapposite. Imperial relies on Local Rules of Civil Procedure 26.1 and 16.1, which govern discovery disputes. Lincoln, however, is not moving to compel another deposition of Mr. Norris, nor is Lincoln seeking a discovery ruling. Lincoln is seeking sanctions based on Imperial's conduct throughout this litigation.

Imperial's purposeful failure to prepare Mr. Norris for his deposition is just part of its pattern of conduct that justifies the imposition of sanctions. Imperial's failure to prepare its witness for trial was the final act in this pattern. The provisions of the Local Rules cited by Imperial are inapplicable to the Court's decision to impose sanctions against Imperial for its conduct throughout the litigation.

## III. Imposing the Monetary Sanctions Requested by Lincoln Will Not Impact the Jury's Verdict and Would Not Modify the Contract Between Imperial and the Trust

Imperial's Response argues that the form of sanctions requested by Lincoln is "improper." This argument, however, completely fails to address the test that must be applied in determining whether the Court should impose sanctions against a non-party pursuant to its inherent power to levy sanctions.[11] Instead, Imperial cites cases which discuss sanctions under Fed. R. Civ. P. 37 and 45 and states that "civil contempt must be remedial in nature." Response, at 18-19. Imperial's argument simply disregards the basis for Lincoln's motion.

Lincoln has requested that the Court rely on its inherent power to impose sanctions and assess a monetary penalty against Imperial equivalent to the amount that the Trust owes to Imperial

---

[11] Sanctions may be warranted if the non-party has "a substantial interest in the outcome of the litigation and . . . substantially participate[d] in the proceedings in which he interfered." *Feldman v. Davidson*, No. 05–61760, 2009 WL 995473, at *2 (S.D. Fla. Apr. 13, 2009).

in satisfaction of the premium and litigation finance loans between Imperial and the Trust.  In fashioning sanctions under the Court's inherent power, the following purposes must be considered: (1) compensating innocent parties injured by the violation; (2) punishing the violator; (3) deterring others from committing similar violations; and (4) streamlining court dockets and facilitating case management.  *See Anchondo v. Anderson, Crenshaw & Assocs, LLC*, No. 08–202, 2011 WL 4549279, at *5 (D.N.M. Sept. 29, 2011).  Here, the proposed sanction (i) compensates Lincoln, the party injured by Imperial's conduct, (ii) punishes Imperial in that Imperial is not entitled to receive remuneration as a result of its bad faith conduct in this litigation, and (iii) deters others – and Imperial itself – from seeking a favorable litigation outcome by purposely failing to prepare a corporate witness.[12]  Additionally, this sanction is appropriately tailored, as it applies a measure of sanctions directly tied to the particular transaction at issue in the litigation and does not divest any money from Plaintiff.  Therefore, the sanction sought by Lincoln against Imperial fulfills the primary purposes for sanctions, and is no more severe than necessary to achieve those purposes.[13]

## IV.     Imperial's Response Reinforces the Arguments In Lincoln's Motion for Sanctions

As discussed in the Motion for Sanctions, sanctions may be imposed against a non-party that substantially participated in the proceedings and had a substantial interest in the outcome of the

---

[12] On this point, Imperial makes the convoluted argument that sanctions will not deter Imperial from pursuing similar conduct in other litigation because "Lincoln's counsel ha[s] acknowledged that [Mr. Norris] is acceptable" in another litigation.  This assertion is curious, as Lincoln's counsel makes no such acknowledgment in the referenced email.  *See* Westerlind Decl., Exh. A.  The email simply requests that Imperial provide documents and dates for its deposition.  The email chain shows that *Imperial informed Lincoln* that Mr. Norris would once again be its designee in that case.  Lincoln cannot force Imperial to choose a different designee, and therefore, must accept for the time being that Mr. Norris will be designated.  There is little doubt, however, that if the Court imposes sanctions on Imperial here, Mr. Norris will be properly prepared for his deposition and trial testimony in that case.

[13] The Response states that imposing the sanction requested by Lincoln "would violate the Due Process and Contracts Clauses of the U.S. Constitution, and would likely be deemed an abuse of discretion by the Eleventh Circuit."  Response, at 19.  The assertion that sanctions would violate the Due Process and Contracts clauses of the Constitution is completely unsupported by any authority.  It is also obviously without merit.  The rule to show cause procedure is specifically meant to afford Imperial due process.  Indeed, Imperial has been afforded notice and an opportunity to be heard.  *See generally*, Response [D.E. # 175].  Also, the sanction requested by Lincoln in no way affects Imperial's contractual rights.  Instead, the total amount of the premium and litigation finance loans are simply being used by Lincoln as a benchmark for determining an appropriate measure of sanctions.

litigation. *See Helmac Prods. Corp. v. Roth (Plastics) Corp.,* 150 F.R.D. 563, 568 (E.D. Mich. 1993). The Response confirms that Imperial satisfies this test. Response, at 3, 5-8 (discussing Imperial's role in the proceedings and stating that "Imperial does not dispute that it had a financial interest in the outcome of the case."). Further, the substance of the Response confirms Imperial's bad faith conduct in failing to prepare Mr. Norris for his trial and deposition testimony. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("[t]he key to unlocking the inherent power of the Court is a finding of bad faith."). First, the declaration of James Westerlind, filed in support of the Response, states that counsel for Imperial reviewed Imperial's document production and purposely segregated documents based on counsel's improperly narrow reading of the Topics. Westerlind Decl., ¶ 6, D.E. # 175-2. It appears from Mr. Westerlind's declaration and Mr. Norris' lack of knowledge about certain documents, that Imperial only educated its corporate witness regarding those documents that were pre-screened by counsel. The rest of the documents in the 20,000 page document production were simply dumped on Mr. Norris to figure out himself. *See* Response, at 5.[14] This falls well short of the obligations imposed by Rule 30(b)(6), which required Imperial to prepare Mr. Norris to "testify about information known or reasonably available to the corporation." Fed. R. Civ. P. 30(b)(6). Accordingly, the Response and the declarations supporting it leave little doubt about Imperial's bad faith in its preparation of Mr. Norris for his deposition.

Even more egregiously, after Imperial knew from its deposition precisely what documents and topics Lincoln considered to be important to its case, Imperial purposely did nothing additional to prepare its witness to appear in front of the Court. Rousseau Decl., ¶ 20, D.E. # 175-1 ("For

---

[14] Mr. Westerlind's declaration regarding the process through which Imperial prepared its witness speaks volumes to explain why Mr. Norris had never seen certain key documents prior to his deposition. For example, Mr. Norris testified that he had never seen: (i) documents sent to the Trust that, if executed, would have transferred ownership of the Policy from the Trust to Imperial (Imperial Dep., 214:2-218:9); (ii) a change of ownership form executed by the Trust (*id.* at 251:7-252:6); and (iii) emails between Imperial personnel and Dennis Felcher discussing the status of the Policy in May and June 2010 – two months before the premium finance loan matured (*id.* at 203:12-204:18). Each of these documents contain evidence supporting Lincoln's contention that the Policy was always intended to be transferred to Imperial. Yet Imperial's witness was never shown these documents prior to his deposition.

several reasons *related to trial strategy*, I decided that I would not 'prepare' the Imperial witness.") (emphasis added). Mr. Rousseau's declaration confirms that Imperial decided to employ a trial strategy that included a purposeful failure to prepare Mr. Norris. Intentionally deciding not to provide relevant information to Mr. Norris is not a "trial strategy." It is depriving the Court and the jury of probative evidence. Other courts, relying on their inherent power to impose sanctions, have punished similar conduct. *See Helmac Prods. Corp.*, 150 F.R.D. at 568 (holding that the court had the inherent power to sanction a non-party for his role in the destruction of evidence); *Anchondo*, 2011 WL 4549279, at *6 (recommending sanctions for deceptive document discovery and testimony); *Bartos v. Pennsylvania*, No. 08-366, 2010 WL 1816674, at *9 (M.D. Pa. May 5, 2010) (imposing sanctions against non-parties for deposition testimony proffered in bad faith).

Counsel for Imperial and the Trust did not think that Imperial should come to trial *completely* unprepared, however. Mr. Rousseau's declaration states that:

> As we got closer to trial, I realized that there were two pieces of information that I would like to elicit from Imperial if Lincoln elected to call Imperial at trial. I spoke with [Mr. Norris] in my capacity as counsel for the Trust, and asked him to inquire of Imperial on two subjects, and I asked questions of him during trial on those two subjects – the number of Imperial loans that financed policies issued by Lincoln and the subset of those loans that were paid through Bank of Utah.

Rousseau Decl., ¶ 21 [D.E. # 175-1]. This disclosure could not be more clear. Counsel for the Plaintiff, who also served as counsel for Imperial and who coordinated Imperial's deposition and trial preparation, determined that there was no need to prepare Imperial to testify at trial with regard to the topics requested by Lincoln. When it came to information that was important to the Trust's case, however, Imperial was directed to prepare for specific topics.[15] Accordingly, there is no longer any mystery as to why Mr. Norris "perked up" and "was more than willing to help" when questioned

---

[15] The Trust did not serve Imperial, a non-party to this lawsuit, with a trial subpoena containing these topics, nor was Lincoln informed of Mr. Rousseau's request that Imperial prepare to testify regarding this information.

by Mr. Rousseau – Imperial prepared Mr. Norris to answer the Trust's questions, but failed to prepare Mr. Norris to answer Lincoln's. *See* Trial Trans., Day 4, 3:24-4:5.

Lincoln believes that the basis for sanctions against Imperial was best articulated by the Court at the trial in this action:

> I am interested in following up with the Imperial matter, as I discussed with you both in terms of that witness and Imperial. I'm not clear on what can be done but I'm offended at their conduct, both with respect to the underlying facts and their conduct in the trial. I have never seen a witness behave as that witness did and so, I would like to know if either party is interested in trying to figure out a sanction I could impose against . . the company. . . . I think they did damage throughout, and the jury findings, I think, support that in terms of what happened in this case.

Trial Trans., Day 4, 159:10-22. Imperial's misconduct clearly satisfies the test for the exercise of the court's inherent power to impose sanctions against a non-party. *Helmac Prods. Corp.*, 150 F.R.D. at 568. Moreover, Imperial's substantive arguments against imposing sanctions are without merit. First, Mr. Norris was questioned about documents and information within the Topics, and he was utterly unprepared to answer the questions asked. Second, Lincoln has not waived its right to seek sanctions against Imperial for Imperial's conduct throughout this litigation. Finally, the measure of sanctions requested by Lincoln – an amount equivalent to the amount that Imperial stands to receive from the Trust pursuant to the premium and litigation finance loans – is appropriate and necessary to punish Imperial for its conduct and deter Imperial from behaving similarly in other lawsuits.

## **CONCLUSION**

For the reasons stated above, Lincoln respectfully requests that the Court grant Lincoln's Motion for Sanctions.

Dated: June 4, 2012

                s/Wendy L. Furman
                Wendy L. Furman, Esq.
                Fla. Bar No. 0085146
                PETT FURMAN, PL
                Attorneys for Plaintiff
                2101 N.W. Corporate Blvd., Suite 316
                Boca Raton, FL 33431
                (561) 994-4311
                (561) 982-8985 fax
                wfurman@pettfurman.com

                *Of Counsel*
                Charles J. Vinicombe, Esq., Admitted  *Pro Hac Vice*
                Michael D. Rafalko, Esq., Admitted *Pro Hac Vice*
                Nicole C. Wixted, Esq., Admitted *Pro Hac Vice*
                Nolan B. Tully, Esq., Admitted *Pro Hac Vice*
                Drinker Biddle & Reath LLP
                One Logan Square
                Suite 2000
                Philadelphia, PA  19103-6996
                (215) 988-2700

                Attorneys for Defendant/Counterclaim Plaintiff/Third-Party Plaintiff The Lincoln National Life Insurance Company

## CERTIFICATE OF SERVICE

     I certify that on June 4, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

                Thomas L. David
                THOMAS L. DAVID, PA
                4800 LeJeune Road
                Coral Gables, FL 33146
                305-371-6600
                305-667-8015 (fax)
                td@davidcapital.com

                Julius A. Rousseau (*pro hac vice*)
                James M. Westerlind (*pro hac vice*)
                Eric Biderman (*pro hac vice*)
                Arent Fox, LLP
                1675 Broadway
                New York, NY 10019-5820
                212-484-3900
                rousseau.jule@arentfox.com

westerlind.james@arentfox.com
biderman.eric@arentfox.com

*Attorneys for Plaintiff Steven A. Sciaretta, as trustee of the Barton Cotton Irrevocable Trust, and Third Party Defendant Sanford L. Muchnick*

Mercer K. Clarke
Clarke Silvergate, P.A.
799 Brickell Plaza
Suite # 900
Miami, FL 33131
305-377-0700
bclarke@cspalaw.com

*Attorneys for Non-Party Imperial Premium Finance, LLC*